618 So.2d 1291 (1993)
Earl B. STEGALL
v.
THE MISSISSIPPI BAR.
No. 91-BA-1224.
Supreme Court of Mississippi.
May 20, 1993.
*1292 Robin Alfred-Midcalf, Whitfield Midcalf & Associates, Biloxi, for appellant.
Charles J. Mikhail, Jackson, for appellee.
En Banc.
SMITH, Justice, for the Court:
The Mississippi State Bar filed a Formal Complaint against attorney Earl B. Stegall alleging in separate counts that he failed to do any work on behalf of two (2) clients after accepting fees. The Complaint Tribunal found Stegall guilty as charged and imposed disbarment as a penalty. We affirm.

FACTS

Count 1
Roger Harveston (Roger) was an inmate at the South Mississippi Correctional Facility, serving a sentence of life in prison for murder. In late 1987, Earl B. Stegall, a practicing attorney since 1972, received a letter from Roger inquiring about the filing of a post-conviction relief motion in his case. The deadline for filing such a motion was August 20, 1989. Stegall promptly answered Roger informing him that the fee for representing him would be $5,000.
Some time later, Roger's parents spoke with Stegall in Natchez, Mississippi. Stegall could not recall the entire meeting, but according to his recollection, the Harvestons inquired whether they could pay the $5,000 fee in two payments. Stegall testified that his custom in such cases was to inform clients that he required $2,500 as a retainer and the other $2,500 "before he did the case." Stegall later explained to the Tribunal that his use of the term "retainer" meant the first $2,500 was nonrefundable, although he did not explain this to the Harvestons.
On April 3, 1989, Mr. and Mrs. Harveston went to Stegall's office in Gulfport, Mississippi. Stegall was not in, so the Harvestons paid his secretary $2,500 by check. They returned the following day and met with Stegall. Stegall gave the Harvestons his home phone number and they left with him the transcripts, briefs, and other papers from their son's trial.
From these contacts with Stegall, it was the understanding and expectation of Mr. and Mrs. Harveston and their son that the first $2,500 payment would be used to file the post-conviction relief motion with the balance due on the day the parties "walked into the courtroom." Mrs. Harveston testified that if the remaining $2,500 had to be paid prior to the motion being filed, that it would have been, since the Harvestons had borrowed over $5,000 and could have paid the full fee immediately.
As the August deadline approached, Mr. Harveston repeatedly attempted to reach Stegall by telephone, leaving at least five (5) messages. Roger Harveston also tried to contact Stegall, requesting status reports, and eventually a refund of the money and a return of his case materials, but no phone calls or messages were returned. Stegall testified that after one conversation in which he refused to return their money, he no longer responded to letters or phone messages from Mr. and Mrs. Harveston or Roger. Stegall insisted that he had already explained he was waiting for the remaining $2,500 to file the motion, and a refund was not part of the agreement. Stegall admitted that Roger's case materials were not returned until August of 1990, over one year after they were first requested. Stegall attributed this to an office error.
On August 8, 1989, Roger Harveston began to draft his own motion from memory and without the benefit of his case materials. The motion was filed pro se on August 15, 1989. Stegall never refunded the $2,500 to the Harvestons.

*1293 Count 2

Jerry Fairman was an inmate at the Mississippi Department of Corrections, Parchman, Mississippi, on a 1985 murder conviction. On January 17, 1989, Fairman related his case to Stegall and requested Stegall's assistance in filing a post-conviction relief motion.
On January 20, 1989, Stegall responded by stating his fee for filing such a motion was $5,000. Later that month Fairman wrote Stegall again, informing Stegall that his family would pay the quoted fee.
On March 23, 1989, Stegall wrote the following letter to Mr. John Fairman, brother of Jerry Fairman, which was the subject of the ensuing dispute between the parties:
 March 23, 1989
 John Fairman
 3640 South Monaco Parkway
 Denver, Colorado 80237
 Dear Mr. Fairman:
As I have advised you previously, my fee for representing your brother would be $5,000. You will have to pay me one half of that as a retainer the other half prior to hearing. I will be filing a Motion for post-conviction Relief for your brother, and if that was not successful a Petition for Writ of Habeas Corpus in Federal Court. If I can provide additional information please advise me.
 Sincerely,
 s/ Earl B. Stegall
 Attorney at Law
On March 30, 1989, Jerry Fairman's mother, Mrs. Luberta Fairman, mailed Stegall the trial transcript and other case papers. By letter dated April 6, 1989, John Fairman advised Stegall that Stegall would receive the $2,500 "retainer" from Mrs. Fairman in a few days, and the other $2,500 "prior to hearing." Shortly thereafter, Mrs. Fairman called Stegall and was instructed to send $2,500 so that he could "get started" on her son's case. She sent a check for $2,500 which Stegall negotiated on April 7, 1989.
Beginning in August of 1989, Jerry Fairman, his mother and brother wrote to and telephoned Stegall requesting status reports. In November, Mrs. Fairman wrote Stegall and noted that it had been seven (7) months since he had been paid, but the family had received no information regarding the Fairman case. She requested a refund and a return of the transcript if no work was to be done.
In his defense, Stegall testified that he used the terminology that $2,500 was a "retainer" fee and $2,500 was payable "prior to hearing" in order to "not have a problem with the fact that it was a retainer that was nonrefundable in the event that they didn't pay the second half." However, Stegall could not say that he ever explained this to John Fairman. Stegall insisted there was no misunderstanding of the fee arrangement which required the full $5,000 be paid before filing any motion. However, he agreed that the hearing he referred to in his March 23 letter would never come about unless he filed a post-conviction motion first. He also conceded that he interpreted the fee agreement to mean that cases where the second payment of $2,500 was not made, he could keep the initial payment without doing any work on a case.
Stegall admitted to not responding to letters or phone calls because he believed he had sufficiently explained and the Fairmans understood the arrangement, but were unwilling to pay the $2,500 balance.
No motion for post-conviction relief was filed by Stegall on behalf of Jerry Fairman and no refund was made to the Fairman family.
The Tribunal found Stegall guilty by clear and convincing evidence of violating Rules 1.3, 1.4, 1.5(a & b), 1.15 and 8.4(a)(c) & (d) of the Mississippi Rules of Professional Conduct.
From the order of the Tribunal to disbar him, Stegall asserts the following issue for review by this Court:
I. THE PENALTY OF DISBARMENT IMPOSED BY THE TRIBUNAL WAS DISPROPORTIONATELY EXCESSIVE AND SEVERE IN COMPARISON WITH CASES INVOLVING MORE SERIOUS VIOLATIONS AND *1294 RECEIVING LESS SEVERE PENALTIES.

LAW
Although review of the evidence by this Court is de novo, deference may be given to the findings of the Complaint Tribunal due to its exclusive opportunity to observe the demeanor and attitude of the witnesses, including the attorney, which is vital in weighing the evidence. Broome v. Mississippi Bar, 603 So.2d 349, 353 (Miss. 1992); Mississippi State Bar v. Strickland, 492 So.2d 567, 571 (Miss. 1986); Levi v. Mississippi State Bar, 436 So.2d 781, 782 (Miss. 1983). Further, this Court is free to evaluate the punishment imposed and to enter any appropriate order that it sees fit. Vining v. Mississippi State Bar Ass'n, 508 So.2d 1047, 1048 (Miss. 1987).
In its findings, the Tribunal stated that Stegall "under conditions which are very close to false pretenses" basically took $2,500 each from the Harvestons and the Fairmans and did nothing on the cases of Roger Harveston and Jerry Fairman, respectively. Stegall does not contest the fact that he violated the Rules of Professional Conduct as charged, but contends here only that the sanction of disbarment is disproportionately severe when compared to other disciplinary actions decided by this Court.
The nature of the misconduct in this case includes neglect of the cases entrusted to Stegall, failure to reasonably inform the clients of the status of their cases, failure to return client property and to render an accounting of client funds, and misrepresentation in the explanation of the services provided in exchange for the quoted fees. Stegall urges this Court to find that this misconduct was not of a nature justifying disbarment, but advocates a reprimand as more appropriate. Following a careful review of sanctions imposed in similar cases, we hold that Stegall's actions warrant disbarment.
This Court has disbarred attorneys who have committed a variety of offenses also involving acts of dishonesty, fraud, deceit, or misrepresentation. See Haimes v. Mississippi Bar, 601 So.2d 851 (Miss. 1992) (Court affirmed Tribunal's disbarment of attorney for commingling client's funds with his own, following a prior, similar offense); Reid v. Mississippi State Bar, 586 So.2d 786 (Miss. 1991) (Tribunal's order of disbarment for conversion of client trust funds affirmed); Mississippi State Bar Association v. Moyo, 525 So.2d 1289 (Miss. 1988) (Court disbarred attorney and vacated Tribunal's order of public reprimand where attorney solicited case and converted client's funds); Foote v. Mississippi State Bar Association, 517 So.2d 561 (Miss. 1987) (attorney disbarred for failure to carry out duties as closing attorney and improper handling of client's funds); Brumfield v. Mississippi State Bar, 497 So.2d 800 (Miss. 1986) (Court vacated suspension imposed by Tribunal and disbarred attorney who defrauded family members by misrepresenting the value of their property).
This Court has considered five (5) factors in determining the severity of the sanction when an attorney is subject to discipline:
(A) Nature of the misconduct involved;
(B) Need to deter similar misconduct;
(C) Preservation of dignity and reputation of the legal profession;
(D) Protection of the public; and
(E) Sanctions imposed in similar cases.
Culpepper v. Mississippi State Bar, 588 So.2d 413, 420 (Miss. 1991) citing Fougerousse v. Mississippi State Bar Association, 563 So.2d 1363, 1366 (Miss. 1990).
Stegall fails to consider all but the last of these factors, the sanctions imposed in similar cases. Yet, we must base our decision "upon the record and the recognized three-fold purposes of punishment." This Court has stated:
First, there is the obvious intent to punish the wrongdoer to the degree that the sanction is appropriate for the offense. Secondly, many theories on the role of sanctions recognize their utility as a deterrence to further violations both on the part of the immediate offender and the general community. Finally, sanctions have a definite role in reinforcing the confidence of the general public in the *1295 ability of society to govern itself. This role is particularly important in regard to Bar disciplinary proceedings because our profession assumes the responsibility of governing its members. Therefore, public confidence and faith in the integrity of the entire Bar is dependent upon our willingness to impose appropriate sanctions on our members who have violated the Code of Professional Responsibility.
Pitts v. Mississippi State Bar Association, 462 So.2d 340, 343 (Miss. 1985). As Justice Sullivan emphasized in Reid, "dishonest conduct by an attorney with his own client goes to the very core of a lawyer's fitness to practice law." 586 So.2d at 788 (citing Mississippi State Bar v. Odom, 566 So.2d 712, 717 (Miss. 1990) (dissenting opinion)). In the instant case, Stegall deliberately violated duties that an attorney owes to every client, indicating a complete lack of concern for the potential injuries they might suffer due to his failure to act on their behalf.
In determining appropriate sanctions for attorney misconduct, this Court has also recognized that The American Bar Association Standards for Imposing Lawyer Sanctions (1986) present helpful guidelines. Foote, 517 So.2d at 564. The standards assume that the most important ethical duties are those obligations which a lawyer owes to clients. These include the duty of diligence (Rules 1.3, 1.4), the duty of loyalty which includes the duty to preserve a client's property (Rule 1.15), and the duty of candor (Rule 8.4), among others. ABA Standards for Imposing Lawyer Sanctions, Introduction (1986).
ABA Standard 4.4 provides:
Disbarment is generally appropriate when... . (b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or (c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.
In light of previous decisions by this Court, as well as the standards and purposes supporting our disciplinary system, we find that the misconduct of Stegall was not of a lesser nature such that the imposition of disbarment was disproportionate. This is particularly true following our review of the mitigating and aggravating factors presented herein.
"The ultimate sanction imposed will depend on the presence of any aggravating or mitigating factors in that particular situation ..." ABA Standards for Imposing Lawyer Sanctions, Introduction (1986). Among the list of aggravating factors is included: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (g) refusal to acknowledge wrongful nature of conduct; and (i) substantial experience in the practice of law, all of which apply to Stegall's conduct herein. ABA Standard 9.22.
We note that in addition to his misconduct in the instant case, Stegall has a history of having complaints lodged against him by clients. These complaints resulted in two (2) private reprimands as well as two (2) informal admonitions by the Bar Committee on Complaints. One of these reprimands was due to a finding that Stegall neglected a matter after accepting a fee and also failed to reach an agreement with that client regarding an adjustment of the fee. Another admonition resulted when Stegall was found to have violated Rule 1.4, which provides that a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation. He also violated DR2-110(A)(2) and (3), which concern improper withdrawal from employment, including delivering to the client all the papers and property to which he is entitled, and provide that a lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.
As to the current proceedings, Stegall does not appear to believe he has committed any wrongs. In answer to the Bar's formal complaint, he denied the alleged violations, and further insisted before the Tribunal that he had done everything he was supposed to under his "agreements" with these clients, despite rules of conduct to the contrary.
*1296 Stegall urges this Court to consider mitigating factors including his past good reputation among his peers and in the community, his cooperation in this disciplinary proceeding, and his honorable service in the U.S. Army. Although we weigh these factors in his favor, we do not find that a consideration of these mitigating factors should serve to alter the imposed sanction when the aggravating factors are similarly considered.
Giving deference to the findings of the Tribunal, as this Court may, we find that the sanction of disbarment was not overly severe. Stegall has failed to learn any lesson from the four (4) prior complaint proceedings and their ensuing reprimands and admonitions. Instead, he has continued to exhibit a tendency to deal with his clients in a manner which leaves them uninformed, frustrated and justifiably dissatisfied with the lack of representation and the attorney/client relationship in general. This Court will not hesitate to impose substantial sanctions when an attorney's act evinces want of personal honesty and integrity or renders such attorney unworthy of public confidence. Culpepper v. Mississippi State Bar, 588 So.2d at 420 (citing Mississippi State Bar v. Odom, 566 So.2d 712, 715 (Miss. 1990); Foote v. Mississippi State Bar Association, 517 So.2d 561, 564 (Miss. 1987)).

CONCLUSION
Stegall's assignment of error that disbarment is disproportionately excessive and severe fails since a review of prior disciplinary actions by this Court and the ABA Standards for Imposing Lawyer Sanctions indicates that this sanction is appropriate. The presence of aggravating factors, greater in both quantity and quality than any mitigating circumstances, further supports our decision. We therefore affirm the judgment of the Complaint Tribunal and order the disbarment of Earl B. Stegall from the practice of law effective immediately. We further order restitution in favor of the two (2) clients noted herein in the amount of $2,500 each.
JUDGMENT OF THE COMPLAINT TRIBUNAL AFFIRMED. DISBARMENT AND RESTITUTION SO ORDERED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE and ROBERTS, JJ., concur.
DAN M. LEE, P.J., concurs in results only.