654 So.2d 505 (1995)
Alan W. CARTER
v.
THE MISSISSIPPI BAR.
Nos. 91-BA-01096-SCT, 93-BA-00918-SCT.
Supreme Court of Mississippi.
April 6, 1995.
*506 Alan W. Carter, Greenwood, pro se.
Michael B. Martz, Jackson, for appellee.
En Banc.
*507 PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION
This consolidated case has three parts. The first part (No. 91-B-00315) concerns an original appeal of a judgment of disbarment, made by a Complaint Tribunal of the Mississippi Bar on September 30, 1991. This judgment resulted through Carter's failure to defend himself at the Complaint Tribunal level, resulting in a default judgment. The second part (No. 91-TS-01096) concerns Carter's appeal from the Complaint Tribunal's denial of Carter's Rule 60(b) motion to set aside the Complaint Tribunal's original disbarment judgment. The third part (No. 91-BA-01096 consolidated with 93-BA-00918) concerns the Complaint Tribunal's Motion for Contempt Citation, made to this Court, for Carter's violation of this Court's order suspending him indefinitely from the practice of law.
As a result, there are three issues to be addressed, as follows:
1) WAS THE SANCTION IMPOSED UPON CARTER BY THE COMPLAINT TRIBUNAL FOR 91-BA-1096, DISBARMENT, EXCESSIVE, OR WOULD THE 20 MONTH PERIOD OF SUSPENSION WHICH CARTER SERVED BE ADEQUATE AND SUFFICIENT IMPOSITION OF SANCTIONS?
2) DID THE COMPLAINT TRIBUNAL ERR IN DENYING CARTER'S MOTION FOR DEFAULT ON HIS ORIGINAL DISBARMENT?
3) WHAT IS THE APPROPRIATE PENALTY, ASSUMING CARTER'S DEFAULT JUDGMENT IS UNANSWERED, FOR CARTER'S PRACTICE OF LAW, WHILE UNDER SUSPENSION BY ORDER OF THIS COURT?

II. STATEMENT OF THE FACTS
As this appeal is three causes in one, this Court will break each part of the appeal down chronologically for ease of comprehension. The first cause concerns the circumstances surrounding the original order of disbarment. The second cause concerns the circumstances on the Complaint Tribunal's denial of Setting Aside a Default Judgment under M.R.C.P. 60(b). The third cause concerns the Motion for Contempt for Carter's violation of a suspension by this Court.

A. Original order of disbarment
Alan Carter first received a warning by a Complaint Tribunal, recommending that he maintain better communication with his clients. This warning was issued August 10, 1987. Alan W. Carter had also received a private reprimand on September 20, 1990, for neglecting a matter entrusted to him, and in failing to perform a contract of employment.
In this latter matter, Carter represented a client in administering an estate for the client's deceased father, beginning in December 1986. Carter took almost two years to probate this estate, including a twenty-one month period in which Carter did not correspond with his client at all. Carter tendered a check for $2,000 to the Bar payable to his client in addition to the estate's proceeds, consisting of money the client believes he could have earned in interest had Carter administered the estate properly and in a timely fashion.
The Complaint Tribunal found Carter's conduct warranted a private reprimand, as a violation of Rule 1.1 concerning competence, Rule 1.3 concerning diligence, Rule 1.4(a), concerning the requirement of reasonable communication between an attorney and his client, and Rule 3.2, requiring an attorney to reasonably expedite litigation.
Carter had filed another lawsuit on behalf of a Mr. Bardo in September 1986. Mr. Bardo discovered between January and February 1990 that his lawsuit had been dismissed. Mr. Bardo requested that Carter give to him all of the papers concerning lawsuit. Carter could not produce these papers.
On March 1, 1990, Mr. Bardo approached Carter concerning a personal bankruptcy. Mr. Bardo and Carter agreed that any attorneys' fees from the bankruptcy would be paid from another case in which Carter represented that client. Carter did not contact Mr. Bardo again until the Grenada Lake Medical Center entered a judgment against Bardo for *508 unpaid medical bills, on June 1, 1990. Carter still did not contact the client until Mr. Bardo presented Carter with a writ of garnishment on July 5, 1990, issued against the client.
Carter did nothing about the garnishment until September 7, 1990, when the client complained that his check had been garnished for one month. Carter then paid Mr. Bardo $150.00 to compensate him for the garnished amount. Carter also did nothing about another creditor, who had asked for an outstanding balance owed by Mr. Bardo. Upon hiring another attorney, the client discovered that Carter had filed no papers with the bankruptcy court.
In 1990, Carter was sanctioned by the bankruptcy court for failure to file interrogatories served upon another of his clients. This concern was never made a Bar complaint.
After Mr. Bardo complained to the Bar, the Mississippi Bar sent two notices of the pendency of this complaint to Carter. The first notice was delivered by the Leflore County Sheriff's Department, through personal service, on April 29, 1991. Carter acknowledged getting and reading the complaint. Carter failed to respond to the complaint. According to his psychologist, Carter was seriously depressed at this time. However, Carter continued to practice law, actively representing clients, and maintaining his legal business at the time.
The Clerk of the Mississippi Supreme Court entered its Docket of Entry of Default on May 30, 1991. The Mississippi Bar then moved for an Entry of Default Judgment against Carter on June 3, 1991. The Mississippi Bar sent a notice of the motion and copy of the notice for the hearing to Carter, by mail, postage prepaid, on August 29, 1991.
On September 13, 1991, a Complaint Tribunal considered the Mississippi Bar's Motion for Default Judgment under M.R.C.P. 55(b). The Complaint Tribunal found Carter in default, and took the allegations of the Formal Complaint as "true and confessed." On September 30, 1991, that Tribunal found that Carter's actions violated, among other rules, Rule 1.1 requiring competent representation; Rule 1.3 requiring diligence in representation; Rule 1.4 which requires reasonable communication from the attorney to his client concerning a case; Rule 1.15(a) and (b) providing that an attorney keep separate from his own money the client's funds; Rule 3.2, requiring an attorney reasonably expedite litigation consistent with his client's request; Rule 8.4(a), (c), and (d), in that an attorney may not violate a Rule of Professional Conduct or engage in dishonest conduct.
For these actions, the Complaint Tribunal disbarred Carter from the practice of law, on September 30, 1991.

B. Complaint's Tribunal's Denial of Setting Aside a Default Judgment under M.R.C.P. 60(b)
The Order of Disbarment was mailed to Carter's last known mailing address, as well as every judge in Carter's county and the federal courts. The Complaint Tribunal later awarded the Mississippi Bar's Costs and Expenses in the disbarment. Carter stated that he received this Order, but failed to notify any of his clients of the disbarment, or any attorney with whom he had an ongoing case, and he also failed to file an affidavit of this notification to the Supreme Court. He stated that he failed to do these required duties because he was blocking things out.
Carter filed a notice of appeal on this disbarment, using cause number 91-B-00315, on October 29, 1991. John Henson represented Carter as counsel. Carter motioned the Tribunal to reopen disbarment proceedings, set aside the judgment of disbarment and allow him instead to transfer to inactive status. Carter stated that he was unable to practice law because of personal incapacity.
Based on this appeal, the Supreme Court of Mississippi decided to treat Carter's motion instead as a remand to the Complaint Tribunal to determine whether Carter could practice law. The Court remanded the matter to the Complaint Tribunal for a determination as to whether Carter was competent to practice law. The Court granted Carter's motion, only upon the condition that he "not engage in the practice of law in Mississippi, either directly or indirectly, from the date of this order until the conclusion of proceedings *509 before the complaint tribunal." Justice Sullivan signed this order for the Court, effective January 24, 1992.
On January 14, 1993, Carter motioned the Complaint Tribunal to set a hearing date on his capacity to practice law. Carter stated in his Motion that he "has complied with this (Court's) order." Carter stated that he now had the required character and education to be "reactivated to the privilege of practicing law." An accompanying affidavit, signed by Dr. William McQuinn, stated that Carter was no longer impaired and could practice law.
On March 15, 1993, Carter moved the Complaint Tribunal for a Partial Summary Judgment, requesting that (1) the tribunal approve his motion to practice law; and (2) that he be allowed to present a defense to the original disbarment, in 91-B-00315. On April 16, 1993, Carter motioned the Complaint Tribunal for relief from a Default Judgment entered, which led to his original disbarment. Carter alleged that he could not answer the original complaint because he was suffering from mental illness. Dr. William McQuinn signed an accompanying affidavit describing Carter's inability to answer the original charges because of his mental illness.
On July 8, 1993, the Complaint Tribunal held a hearing to determine whether Carter was entitled to relief from the default judgment. Dr. William McQuinn, a psychologist, testified that Carter suffered from serious depression for two years prior to May 1991, when Carter began to see Dr. McQuinn. Dr. McQuinn stated that Carter's depression manifested itself in Carter's inability to deal with anything stressful, at least from March 1991 to October 1991. This depression arose from marital difficulties culminating in divorce. Dr. McQuinn stated that Carter was hospitalized twice for depression, in October and December 1991.
Dr. McQuinn had Dr. Charlton Stanley test Carter for a diagnosis of his mental condition. According to Dr. McQuinn, Dr. Stanley's findings supported Dr. McQuinn's diagnosis. Dr. McQuinn stated that he had recommended Carter cease law practice in October and December 1991. Dr. McQuinn did not recommend withdrawal from law practice in May 1991. Dr. McQuinn found that Carter was capable of resuming practice in April 1992.
On July 8, 1993, the Complaint Tribunal directed the Mississippi Bar to "take a position" concerning Carter's mental competence to practice law. Both the Mississippi Bar and Carter agreed to have Dr. Charlton Stanley evaluate Carter for competence in practicing law. Dr. Stanley determined that Carter was no longer impaired and was capable of practicing law. On hearing the evidence of Carter's competence, the Complaint Tribunal then made two orders.
First, the Complaint Tribunal denied Carter's Motion for Relief from Default Judgment. The Tribunal determined that Carter failed to satisfy this Court's requirements for obtaining such a relief from judgment under Rich v. Nevels, 578 So.2d 609 (Miss. 1991). Second, the Complaint Tribunal reinstated Carter's appeal on this Court's docket. The Complaint Tribunal vacated this Court's suspension of Carter, and reinstated Carter's appeal, which effectively operated as supersedeas against the original order of disbarment, under Miss.R.Disc. 9.3. This reinstatement was effective July 22, 1993. Chief Justice Armis Hawkins, for the Court, set the original appeal of disbarment on this Court's docket and reinstated Carter to the practice of law, on August 17, 1993.
Carter noticed an appeal from the Complaint Tribunal's Denial of Relief from the Default Judgment. This appeal was under cause no. 91-TS-1096. 91-B-00315 became 93-TS-00918, as it was given that number when the Tribunal reinstated Carter's original appeal. Justice Pittman, for this Court, consolidated the appeals for 91-TS-01096 and 93-TS-00918, on December 6, 1993.
Carter filed a consolidated brief for both of these causes on May 31, 1994. The Mississippi Bar filed an appellee's brief on the consolidated causes on September 16, 1994.

C. Motion for Contempt for Carter's Violation of a Suspension Ordered by this Court
As stated above, this Court granted Carter's motion for remand to the Tribunal, for a *510 determination of his capacity to practice law, effective January 24, 1992. Carter signed an acknowledgment stating he could not practice law from January 1992, and stating that he would not practice law. The Complaint Tribunal vacated this Court's suspension of Carter, effective July 22, 1993, when it certified that Carter was capable of law practice. On August 17, 1993, this Court reinstated Carter to practice based on the Complaint Tribunal's decision.
The Mississippi Bar received several other complaints against Carter for violations of the Rules in his representation of others, while under this Court's suspension.
Carter represented a Mrs. Hathcock in October 1990 through January 1993 on a social security matter. Carter also represented Terry Hathcock in a workers' compensation case, beginning in mid-October 1992. In January 1993, Terry Hathcock was injured in an automobile accident, and Carter represented him in that matter. In mid-February 1993, Carter settled the workers' compensation case, and the personal injury case from the accident. Carter received $2000 from Terry for the personal injury settlement. As part of this transaction, Terry repaid a personal loan Carter had made to him outside of court costs, a violation of the Rules of Professional Responsibility. Carter also took over $1700 from the settlement to pay Terry's medical bills, which Carter never paid. Carter did not use a trust account to handle these settlement funds. This matter became the basis of Bar Complaint No. 94-B-58.
In another case, Bar Complaint No. 93-B-408, John Thomas retained Carter to represent him in a divorce, on May 28, 1991. After several delays, Mr. Thomas signed a property settlement agreement on February 2, 1992, after this Court's order suspending Carter from law practice. Mr. Thomas asserted that Carter did instruct him to meet him at Vaiden on March 3. Mr. Thomas did not see Carter there. Mr. Thomas stated that Carter called him at the courthouse, stating he could not make it there. Carter denied telling Mr. Thomas to be at the Vaiden, Mississippi courthouse on March 3, 1992, to conduct a divorce hearing. Mr. Thomas asserted that Carter later told him that the chancellor would agree to an out-of-court settlement by mail. At this meeting, on April 2, 1992, Carter denied advising Mr. Thomas that the chancellor would sign a divorce decree through mail. Carter again met with Mr. Thomas around May 27, 1992. Carter told Mr. Thomas the chancellor could finalize the divorce on June 2, 1992. Carter admitted "I was wrong" in not informing Mr. Thomas that he could not practice law. Carter later styled it as "an injustice to Mr. Thomas." The chancellor did not finalize this case. Carter also stated that he prolonged this divorce matter in order to conclude it after this Court terminated his period of suspension.
Carter later met with Mr. Thomas on July 5. Carter finally told Mr. Thomas he could not practice law at that time. He assisted in helping Mr. Thomas find a new attorney, and offered to refund Mr. Thomas his money. However, Carter had not done so at the time of the hearing. Mr. Thomas also stated that he had not received any papers due him from Carter's representation.
Carter stated his actions with both his representation and his failure to respond to the Bar were a result of emotional disturbance. He stated that this disturbance should mitigate any penalties.
After Mr. Thomas complained to the Bar, the Bar held a hearing on December 22, 1992. Carter had notice of this hearing, but did not appear. The Bar sent a letter to Carter requesting certain information about this matter, on January 14, 1993, but Carter did not respond.
The Complaint Tribunal held its last hearing concerning Carter on April 22, 1994, concerning Bar Complaint Nos. 93-B-408 and 94-B-58. Carter attended this hearing. Carter admitted that he violated Rule 1.2(a) in his representation of Mr. Thomas. Carter stated that Mr. Thomas wanted his divorce handled in a timely way, and admitted that he had not done so. Carter admitted that he did not handle this case with reasonable diligence and promptness, a violation of Rule 1.3. Carter admitted he violated Rule 1.4(a) in failing to keep Mr. Thomas reasonably *511 informed of his case. Carter admitted that through his failure to respond to the Bar's requests for information, he violated Rule 8.1(b).
At the close of the proceedings, the Bar requested that the tribunal allow amending the complaint to include a violation of Rule 5.5. This rule prohibited practice where a party would break the regulation of professional responsibility in that jurisdiction. The tribunal asserted Carter's practice during his suspension violated those rules.
The tribunal found that Carter violated Rules 1.2(a), 1.3, 1.4(a), 8.1(b), 8.4, 5.5(a), 11(c), 1.16(a), and 3.4(c) in his representation of Mr. Thomas. The tribunal held Carter should produce psychiatric certification of his competency to practice law, and pay court costs as conditions for his reinstatement, for cause 93-B-408. As to 94-B-58, concerning Carter's representation of Mrs. Hathcock, the tribunal suspended its deliberations pending Carter's transmittal of mitigating evidence within ten days of the hearing. No such showing of mitigating evidence is in the record for 94-B-58.
The Complaint Tribunal then suspended Alan Carter for one year, entered August 10, 1994, based upon his violations of the Rules in 93-B-408 and 94-B-58.
The Mississippi Bar, based on Carter's practice in defiance of an order of this Court, moved for contempt proceedings. The Bar requested only general relief and sanctions, without specifying the exact sanction for his unauthorized practice of law. The Bar requested attorneys' fees.
This Court responded to the Bar's motion by issuing a Show Cause Order against Carter, dated October 6, 1994. This show cause order stated that failure to respond to this order will result in this Court "dispos(ing) of same (Motion for Contempt) as this Court deems proper and as the circumstances require, such disposition may include, but not be limited to, granting the relief requested."
Carter received the show cause order on October 27, 1994. As of January 31, 1995, Carter had not responded to the order. In addition, this Court filed a second show cause order on February 2, 1995. This order specifically stated that disbarment was a potential penalty in this matter. Carter received this notice on February 9, 1995. Carter failed to respond to this notice, as of March 14, 1995.

III. ANALYSIS
The standard of proof in disciplinary cases is clear and convincing proof. Attorney W.L. v. Mississippi Bar, 621 So.2d 235, 237 (Miss. 1993). The Court reviews the evidence de novo. Mathes v. Mississippi Bar, 637 So.2d 840, 846 (Miss. 1994). This Court may accept or reject the evidence presented in whole or part, although deference may be given to the findings of the Complaint Tribunal because it has the best opportunity to observe the witnesses. Stegall v. Mississippi Bar, 618 So.2d 1291, 1294 (Miss. 1993). This Court may impose whatever sanction it finds appropriate. Stegall, 618 So.2d at 1294 (Miss. 1993).

1) WAS THE SANCTION IMPOSED UPON CARTER BY THE COMPLAINT TRIBUNAL FOR 91-BA-1096, DISBARMENT, EXCESSIVE, OR WOULD THE 20 MONTH PERIOD OF SUSPENSION WHICH CARTER SERVED BE ADEQUATE AND SUFFICIENT IMPOSITION OF SANCTIONS?
Sanctions are imposed under the following factors: (1) the nature of the misconduct involved; (2) the need to deter similar misconduct; (3) the preservation of dignity and reputation of the legal profession; (4) the protection of the public; and (5) sanctions imposed in similar cases. Harrison v. Mississippi Bar, 637 So.2d 204, 222 (Miss. 1994). Additional guidelines, as suggested by the American Bar Association (ABA), include "(1) the duty violated; (2) the lawyer's mental state; (3) the potential or actual injury caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors." Harrison, 637 So.2d at 222.
The nature of the misconduct involved goes to one repeated set of facts. Carter took money from clients, promised to act as their counsel, and did nothing. By doing so, he violated Rules 1.1 (competence); Rule 1.3 (diligence); Rule 1.4 (communication *512 with client), and Rule 3.2 (duty to expedite litigation). In addition, taking a client's money while promising to work for the client, and doing nothing, is deceitful, violating Rule 8.4(a), (c) and (d).
The Tribunal found that Carter had violated these rules in his representation of Mr. Bardo. Likewise, the Tribunal had found that Carter had violated the same rules earlier in his representation of another client, which earned him a private reprimand. Furthermore, Carter had received a warning to the effect that he should communicate with his clients more effectively and promptly.
This Court has stated when neglect of a client arises, the "need to deter similar misconduct is great." Hall v. Mississippi Bar, 631 So.2d 120, 126 (Miss. 1993). "[D]ishonest conduct by an attorney with his own client goes to the very core of a lawyer's fitness to practice law." Reid v. Mississippi Bar, 586 So.2d 786, 788 (Miss. 1991). The failure to follow the Rules involving duties to clients, which Carter has violated, involve the most important ethical standards this profession espouses. Stegall, 618 So.2d at 1294.
Third, the imposition of sanctions in this case is absolutely necessary to bolster "the confidence of the general public in the ability of society to govern itself." Pitts v. Mississippi State Bar Ass'n, 462 So.2d 340, 343 (Miss. 1985). Thus, this Court's imposition of sanctions implicates the need to preserve the reputation of the legal profession, the third factor in imposing sanctions. Stegall, 618 So.2d at 1294.
Fourth, the protection of the public is at risk in this case. Carter's repeated failure to act in Mr. Bardo's interests, both in his lawsuit against another party, and Mr. Bardo's bankruptcy suit, conceivably cost Mr. Bardo proceeds from his lawsuit, and protection against garnishment and creditors in the bankruptcy suit. Indeed, even Carter recognized his debt to Mr. Bardo when he paid Mr. Bardo compensation for part of Mr. Bardo's garnished wages. Through Carter's inaction, Carter demonstrated "a complete lack of concern for the potential injuries they (his clients) might suffer due to his failure to act on their behalf." Stegall, 618 So.2d at 1294. Carter's actions since the imposition of disbarment, including more violations of duties to clients, while suspended from practice, is more reason to protect the public from Carter.
Fifth, regarding sanctions imposed in similar cases, at least one other case has involved the disbarment of an attorney for multiple violations of his duty to a client. Stegall v. Mississippi Bar, 618 So.2d 1291, 1296 (Miss. 1993). But see Fougerousse v. Mississippi State Bar Ass'n, 563 So.2d 1363, 1366-67 (Miss. 1990) (pattern of delay and tardiness warrants 90 day suspension). As this Court has noted, the American Bar Association Standards for Imposing Lawyer Sanctions state that it is appropriate to disbar an attorney for a knowing failure to "perform services for a client," causing "serious or potentially serious injury" to that client. Stegall, 618 So.2d at 1295.
It is true that this Court has meted out only a public reprimand in one case of neglect, where the attorney suffered from personal problems. Vining v. Mississippi State Bar Ass'n, 508 So.2d 1047, 1048 (Miss. 1987). However, in this case this Court notes a pattern of client neglect, in times of depression and also in times when Carter himself stated he was capable of practice. Professional discipline may be warranted where the attorney shows "a continuing pattern of neglect" to his clients. Broom v. Mississippi Bar, 603 So.2d 349, 356 (Miss. 1992) (McRae, J., dissenting).
In addition, the four American Bar Association Guidelines for Sanctions merit discussion. Harrison, 637 So.2d at 222. First, the duty violated is neglect of an attorney's obligations to his clients. This violation is grave, particularly in this case, and is covered in detail above.
As to the lawyer's mental state, Carter alleges his mental state should be a mitigating factor. Carter submits the affidavit of Dr. William C. McQuinn, who states that Carter told him that his depression affected both his personal and professional life in May 1991, when Dr. McQuinn began treating Carter. Dr. McQuinn stated that this depression had been ongoing for two years prior to 1991. Dr. McQuinn hospitalized Carter twice for *513 depression, once from October 22, 1991, to November 8, 1991, and once on December 5, 1991, after a drug overdose.
Dr. McQuinn told Carter he should refrain from law practice in December 1991, but stated that Carter had regained the ability to practice in April 1992.
However, Carter's representation with Mr. Bardo began in 1986, and Bardo's lawsuit was dismissed for lack of prosecution in 1988, well before Carter complained of depression. Even assuming that Carter was depressed from 1989 to 1991, if he found that his illness had affected his ability to practice law, Carter had the affirmative duty to remove himself from representation. Miss. R.Pro.Cond. 1.16 (mandating lawyers terminate representation of client when lawyer's mental condition materially impairs ability to represent client). Carter's depression lasted a significant period of time. Carter cannot complain of a suddenness in his condition. As a result, his mental condition is only a slight mitigating factor.
This Court has stated that personal or emotional problems may be a mitigating factor, but has also stated that a pattern of misconduct, and multiple offenses are aggravating circumstances. Harrison, 637 So.2d at 227. Carter violated these rules concerning duties to clients, over two separate incidents and a substantial amount of time. Considering his actions after the imposition of suspension, which include two more complaints for violations of these same rules, a pattern of misconduct is clearly discerned. These circumstances are aggravating factors against Carter.
The potential injury caused by Carter's misconduct is severe. As stated above, Carter's misrepresentation of Bardo caused Bardo's loss of potential recovery for a lawsuit, and protection against creditors for garnishment.
The existence of mitigating and aggravating factors is discussed above. On balancing, the test goes against Carter, because of his repeated violations of these fundamental rules.
Carter makes the argument that this Court's order suspending him from the practice of law while he was recuperating his ability to practice is punishment enough. This argument is particularly specious when Carter himself admits practicing throughout this period of suspension. This assignment of error is without merit.
As a result, this Court properly finds that disbarment is warranted under the circumstances of this case.

2) DID THE COMPLAINT TRIBUNAL ERR IN DENYING CARTER'S MOTION FOR RELIEF OF DEFAULT JUDGMENT ON HIS ORIGINAL DISBARMENT?
The Mississippi Rules of Civil Procedure apply to default judgments in disciplinary procedures. Harrison, 637 So.2d at 215. Default judgments are not favored. Terrell v. Mississippi Bar, 635 So.2d 1377, 1381 (Miss. 1994). This Court will review grants of default judgments under an abuse of discretion standard. Williams v. Kilgore, 618 So.2d 51, 55 (Miss. 1992). The three prongs for determining abuse of discretion are (1) good cause for the default; (2) a colorable defense to the merits of the claim; (3) prejudice suffered by the non-moving party "if default is set aside." Williams, 618 So.2d at 55.
Carter states that his depression prevented him from responding to the Bar's complaint. His psychologist, Dr. William McQuinn, stated that Carter could not respond to any stressful situations as a result of his depression, including the filing of income tax statements for seven years before his hospitalization in late 1991.[1]
However, the law presumes mental competence and sanity of individuals. Rich v. Nevels, 578 So.2d 609, 614 (Miss. 1991). Carter continued to practice law, and also responded to the complaint with a notice of appeal on the original disbarment, in October 1991. Carter also participated in team *514 sports throughout the spring of 1991. Carter stated that he knew that there was a bar complaint against him in May 1991. He further stated that he knew it required an answer.
Furthermore, Dr. McQuinn has stated Carter has been able to practice law since April 1992. However, Carter has still failed to respond to this Court's show cause order made October 27, 1994, while he was presumably competent to practice. This set of circumstances indicates a selective inability to respond to difficulties, which does not demonstrate a lack of competence. Carter has not met the first prong of this point.
Carter has no defense, let alone a colorable defense, to the merits of the original matter of disbarment. During the hearing, Carter only stated that he had a defense to Bardo's complaint, without spelling out what his client did that hindered Carter's representation. Carter's clients themselves have testified that Carter took their money and failed to represent them in several matters, including a lawsuit and a bankruptcy matter. Furthermore, Carter's mental condition is a mitigating factor, and not a defense, to his violations of the Mississippi Rules of Professional Conduct. See Harrison, 637 So.2d at 227 (mental condition of lawyer is mitigating factor).
The third prong, prejudice to the Bar, is closer to Carter's favor. The Complaint Tribunal found insufficient proof of prejudice against the Bar, nevertheless refusing to set aside the default judgment. However, Carter's actions in violating the duties he owed his clients, in addition to his practice in contravention of this Court's order, prejudice the standing of the legal profession in the eyes of the community.

3) WHAT IS THE APPROPRIATE PENALTY FOR CARTER'S PRACTICE OF LAW, WHILE UNDER SUSPENSION BY ORDER OF THIS COURT?
The appropriate penalty for this situation is disbarment. In September 1991, the Complaint Tribunal determined that a penalty of disbarment was appropriate for Carter's activities, comprising the first count against him. Through Carter's request, this Court stayed a determination of that count while Carter recovered his capacity to practice law. This Court's only condition was that he refrain from practicing law during this period.
Despite this Court's condition, Carter knowingly and deliberately continued his practice. He received the benefits of the stay in this first action, without accepting the responsibilities of this Court's condition. Carter also violated many of the same Rules of Professional Responsibility during this period which the Complaint Tribunal had found Carter to violate in the first action.
This Court has heard many prior cases concerning violations of Rules 1.2, 1.3, and 1.4, which comprise the violations leading to Carter's first disbarment. This Court has not heard a direct violation of Rule 5.5(a). This Rule concerns a prohibition of practice where such practice would violate the Rules of Professional Conduct, such as practice without a license or while suspended. The West Virginia Supreme Court found a twelve month suspension proper under these circumstances. Committee on Legal Ethics of West Virginia State Bar v. Taylor, 190 W. Va. 133, 137, 437 S.E.2d 443, 447 (1993). However, where the attorney also committed ethical violations of failure to use diligence and communicate with a client, while practicing law during a suspension, the Oklahoma Supreme Court recommended disbarment. State ex rel. Oklahoma Bar Ass'n v. Downing, 863 P.2d 1111, 1115 (Okla. 1993).

IV. CONCLUSION
This Court holds that (1) the Bar's motion for contempt citation is granted; (2) Carter's appeal for the Tribunal's denial of his Rule 60(b) motion to set aside the Tribunal's original disbarment is denied and the Court affirms the Tribunal's denial of the motion; and, (3) the original appeal of the judgment of the Tribunal disbarring Carter on September 30, 1991, is affirmed. The disbarment of Alan W. Carter from the practice of law is ordered with the following directives:
A. Alan W. Carter is hereby disbarred from the practice of law in the State of Mississippi and his name shall be immediately struck from the rolls of the Mississippi Bar;

*515 B. The Clerk of the Supreme Court of Mississippi (the Clerk) shall immediately forward to the attorneys of record for each party herein a copy of this opinion, and shall send Mr. Carter's copy by Certified Mail, Return Receipt Requested;
C. The Clerk shall immediately forward an attested copy of this opinion to the Clerks of the United States District Court, Northern and Southern Districts of Mississippi, to the Clerk of the United States Court of Appeals for the Fifth Circuit, and to the Clerk of the Supreme Court of the United States;
D. The Clerk shall forward an attested copy of this opinion to the Executive Director of the Mississippi Bar;
E. The Bar is entitled to recover from Mr. Carter all costs of this disciplinary proceeding, as well as all previously assessed sums. The Bar shall file its Motion for Costs and Expenses with the Tribunal within ten (10) days of the filing of this Order;
F. Mr. Carter is hereby enjoined from practicing law in Mississippi; from holding himself out as an attorney at law; from performing any legal service for others; from accepting any fee directly or indirectly for legal services to be performed for others; from appearing as counsel or in any representative capacity in any proceeding in any Court of the State of Mississippi, or before any administrative body or agency thereof; from holding himself out to others as or using his name in any manner, in conjunction with the phrases "attorney at law," "attorney," "counselor at law," "counselor," or "lawyer," for the period of his disbarment until such time as he is reinstated to the practice of law in this State by the Supreme Court of Mississippi;
G. Within ten (10) days of receipt of this opinion, Mr. Carter shall notify in writing each and all of his Mississippi clients of his disbarment and of his consequent inability to act as an attorney and shall advise each such client to promptly substitute another attorney or attorneys in his place or to seek legal advice elsewhere;
H. Mr. Carter shall return all files, papers, monies and other properties belonging to his Mississippi clients in his possession, if any such clients request same after receiving notification from him. Within thirty (30) days of receipt of this opinion, Mr. Carter shall file with this Court and the Complaint Tribunal of the Mississippi Bar an Affidavit stating that all current Mississippi clients have been notified of his disbarment and that all files, papers, monies and other property belonging to such clients have been returned as ordered herein; and showing in the cases where it was not possible to notify such clients or return their property, that due diligence was used to do so;
I. Within ten (10) days of receipt of this opinion, Mr. Carter shall notify every attorney and adverse party in any Mississippi proceeding in which he is involved and all affected Courts and agencies, of his disbarment and consequent inability to act as an attorney. Within thirty (30) days of receipt of this opinion, Mr. Carter shall file with this Court and the Complaint Tribunal of the Mississippi Bar an Affidavit stating that all attorneys or adverse parties in any such proceeding in which he is involved, and all affected Courts and agencies, have been notified of his disbarment and consequent inability to act as an attorney;
J. In accordance with the Order of this Court dated December 5, 1988, public disclosure of this opinion shall become a matter of public record, and the contents of the Mississippi Bar's file in this matter shall likewise in all respects be a public record.
MOTION FOR CONTEMPT CITATION GRANTED. COMPLAINT TRIBUNAL'S DENIAL OF ALAN W. CARTER'S MOTION TO SET ASIDE ORIGINAL DISBARMENT IS AFFIRMED. JUDGMENT OF THE COMPLAINT TRIBUNAL'S DISBARMENT OF ALAN W. CARTER IS AFFIRMED. DISBARMENT SO ORDERED.
HAWKINS, C.J., DAN M. LEE, P.J., SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
NOTES
[1] In many states, the repeated failure to file tax returns, by itself, is an independent ground for attorney discipline, including suspension. In re DesBrisay, 288 Or. 625, 606 P.2d 1148, 1151 (1980) (failure to file income tax returns for four years warrants four year suspension).