WALLER, Chief Justice,
for the Court:
¶ 1. These consolidated cases are comprised of a formal complaint filed by the Mississippi Bar seeking reciprocal discipline against attorney Kathleen L. Caldwell, following the Supreme Court of Tennessee’s imposition of a two-year suspension from the practice of law in 2009 and a public censure in 2011, and a petition for reinstatement from Caldwell from her suspension imposed by this Court in 2004.
FACTS
¶ 2. In May 2004, this Court suspended Caldwell from the practice of law for nine *551 ty days as reciprocal discipline based on a suspension of equal length imposed by the Supreme Court of Tennessee several months earlier. Miss. Bar v. Caldwell, 890 So.2d 855, 856-57 (Miss.2004). In October 2003, the Supreme Court of Tennessee had suspended Caldwell based on eighteen separate complaints of misconduct. Her “ ‘chronic ethical misconduct’ ” included: (1) failing to file pleadings and documents; (2) losing evidence; (3) allowing a statute of limitations to run; and (4) neglecting to keep her clients informed. Id. at 856 n. 1. She had been admonished informally four times prior to 2004 — three times by the Supreme Court of Tennessee and once by this Court. Id. at 856.
¶ 3. In enforcing its reciprocal discipline, this Court found that Caldwell already had completed the ninety-day suspension, because she voluntarily had suspended her Mississippi law practice several months before. Id. at 857. We stated that she could petition for reinstatement if she met the conditions set forth by the Supreme Court of Tennessee. Id. Those included: (1) completing a course in ethics and professionalism at the University of Memphis School of Law and an ethics workshop conducted by the Tennessee Board of Professional Responsibility (“the Board” or “the Tennessee Board”); (2) undergoing a law-practice management evaluation and complying with its suggestions; (3) permitting disciplinary counsel for the Tennessee Board of Professional Responsibility to monitor her law practice for one year; and (4) making restitution to various ex-clients. Id.
¶ 4. More than seven and a half years later, on December 8, 2011, Caldwell petitioned this Court for reinstatement. Her two-page petition states that she has completed the prerequisite conditions for reinstatement and that she is an attorney in good standing in Tennessee.
¶5. In response to Caldwell’s petition, the Mississippi Bar filed a motion to dismiss. It seeks to dismiss her petition on two grounds. First, the Bar argues that her petition fails to meet the requirements set forth in procedural Rule 12.7 of the Mississippi Rules of Discipline. Second, just two days before filing its motion, the Bar had filed a complaint requesting this Court to discipline Caldwell reciprocally for misconduct that had occurred in Tennessee since her May 2004 suspension.
¶ 6. After completing her 2003 Tennessee suspension, Caldwell resumed practicing law in that state. But, in March 2005, the Tennessee Board filed a petition for discipline against her. The Board alleged that Caldwell had neglected two clients’ $2.6 million race-discrimination lawsuit. The aggrieved clients complained that Caldwell had done nothing on their case for four or five years. During that time, they had not been able to speak with Caldwell; they had dealt only with Caldwell’s secretary, Carolyn Holland. The clients said that they eventually were informed about a $10,000 settlement offer. Upon learning this, they contacted the court and discovered that their case had been dismissed with prejudice weeks earlier for failure to prosecute. After reporting Caldwell’s misconduct, they each received checks totaling $7,000 from Caldwell’s personal checking account. The clients alleged, and the Board agreed, that Caldwell most likely paid the clients from her own personal funds.
¶ 7. Six months later, the Board filed a supplemental petition for discipline against Caldwell. The supplemental petition charged that Caldwell had failed to properly supervise a nonlawyer assistant, that she had neglected a client’s case, that she had engaged in misrepresentation, and that she had failed repeatedly to respond *552 in a timely manner to an ethics complaint against her.
¶ 8. The Board filed yet another supplemental' petition for discipline in March 2006. That petition alleged that Caldwell’s negligence and failure to communicate had caused a client’s case to be dismissed. The client, as a result, had filed an ethics complaint. After the complaint was filed, Caldwell informed the client that she no longer could represent the client in two pending matters. Yet, in one of those pending cases, Caldwell did not tell the opposing party that she had withdrawn from representation. Instead, Caldwell continued representation, settled the case, had the settlement check made payable to herself and the former client, and paid herself a third of the total amount. Caldwell blamed these acts and omissions on her former secretary, Holland. To the extent that Holland was responsible, the Board charged Caldwell with violating the rules of professional conduct by allowing a nonlawyer assistant to engage in such misconduct.
¶ 9. Caldwell entered a conditional guilty plea[1] to the petition and supplemental petitions for discipline. Accordingly, in March 2009, the Supreme Court of Tennessee suspended Caldwell from the practice of law for twenty-four months — an actual suspension of six months, followed by a probation period of eighteen months. The court ordered Caldwell to report monthly to a “practice monitor” during the probation period to ensure that she complied with the rules of professional conduct. The court further required Caldwell to pay all costs and expenses within ninety days of the date of entry of the order.
¶ 10. Seventeen months into the twenty-four month suspension, in August 2010, the Board filed another petition for discipline against Caldwell. Caldwell had resumed practicing law under probation in October 2009, but the Board asserted that she had been ineligible to do so because she had failed to pay costs and expenses within ninety days of the court’s March 2009 order. Caldwell had not satisfied that condition until March 2010; thus, she had engaged in the unauthorized practice of law from October 2009 to March 2010. Caldwell also entered a conditional guilty plea to this complaint. Consequently, in June 2011, the Supreme Court of Tennessee ordered that Caldwell be publicly censured and required her to pay the costs and expenses of the proceeding.
¶ 11. On January 9, 2012, the Mississippi Bar filed a complaint requesting that Caldwell be disciplined reciprocally based on the Supreme Court of Tennessee’s March 2009 and June 2011 disciplinary orders. The complaint does not allege Caldwell committed misconduct in this state; rather, the Bar merely seeks to have Caldwell reciprocally disciplined for her misconduct in Tennessee. The Bar does not request or recommend any specific punishment; it simply recommends that Caldwell be disciplined and be required to pay the costs and expenses associated with the complaint.
¶ 12. In her answer to the Bar’s complaint, Caldwell attributes the events that led to her March 2009, twenty-four-month suspension in Tennessee to Holland. Holland, Caldwell says, had caused the two individuals with the $2.6 million race-discrimination lawsuit to believe that Caldwell would represent them, and had created documents and forged checks from Caldwell’s personal account. Caldwell says *553 that she terminated Holland in May 2005; afterward, she received calls from numerous purported clients, none of whom she had agreed to represent. She maintains that she self-reported to the Tennessee Board of Professional Responsibility and contacted the Memphis Police Department and the Tennessee Attorney General’s Office regarding more than $200,000 that was missing from her general-account funds. Holland eventually repaid the money, according to Caldwell. As for the June 2011 public censure, Caldwell says that she had believed that she had complied fully with the requirements imposed by the Tennessee Supreme Court in its March 2009 order.
¶ 13. Caldwell maintains that she has fulfilled all the requirements of the March 2009 and June 2011 orders, including the payment of all costs and expenses. A letter from the chief disciplinary counsel for the Tennessee Board, dated November 18, 2011, states that Caldwell is a member in good standing of the Tennessee Bar. The letter further confirms that Caldwell has completed the requirements set forth in the Supreme Court of Tennessee’s October 2003 order of suspension. The letter, however, is silent concerning the March 2009 and June 2011 orders.
¶ 14. Caldwell requests that this Court deny the Bar’s complaint and motion to dismiss and grant her petition for reinstatement to the practice of law.
DISCUSSION
I. The Bar’s Complaint
¶ 15. Under Rule 13 of the Mississippi Rules of Discipline, when sanctions are imposed against an attorney by another jurisdiction, such sanctions are grounds for disciplinary action in this state. Further, the rule provides that an order of enforcement from another jurisdiction serves as “conclusive evidence of the guilt of the offense or unprofessional conduct” alleged. M.R.D. 13. Hence, this Court will not pursue any further fact-finding but, rather, will determine solely the extent of the discipline to be imposed. Miss. Bar v. Gaharan, 38 So.3d 629, 630 (Miss.2010); Miss. Bar v. Ishee, 987 So.2d 909, 911 (Miss.2007).

A. Appropriate Discipline

¶ 16. In determining reciprocal discipline, “the sanction imposed in this State generally mirrors the sanction imposed in the sister state, absent extraordinary circumstances which compel, justify or support variance from the foreign jurisdiction’s sanction.” Ishee, 987 So.2d at 911. However, we may impose sanctions less or more severe than those imposed by another jurisdiction. Id. In determining appropriate discipline, including reciprocal discipline, this Court has established nine criteria to consider:
(1) the nature of the misconduct involved; (2) the need to deter similar misconduct; (3) the preservation of the dignity and reputation of the profession; (4) protection of the public; (5) the sanctions imposed in similar cases; (6) the duty violated; (7) the lawyer’s mental state; (8) the actual or potential injury resulting from the misconduct; and (9) the existence of aggravating and/or mitigating factors.
Miss. Bar v. Hodges, 949 So.2d 683, 686 (Miss.2006). As long as each criterion is taken into consideration, we need not address each separately. Id.
 ¶ 17. An attorney facing reciprocal discipline in this state may “offer any mitigating factors which he [or she] thinks serve to diminish his [or her] culpability and therefore diminish the necessity for, or severity of, sanctions to be imposed by this Court.” Miss. Bar v. Strauss, 601 *554 So.2d 840, 844 (Miss.1992). In her answer to the Bar’s complaint, Caldwell lays the blame for the alleged misconduct on her former secretary, just as she did before the Tennessee Board. She claims to have made “strenuous efforts” to cure the problems caused by Holland. Yet, Caldwell ignores that she was disciplined for, inter alia, failing to properly supervise Holland. As such, the fact that Holland may have committed some of the alleged misconduct does not constitute a mitigating factor in favor of Caldwell.
¶ 18. With respect to the 2011 discipline for engaging in the unauthorized practice of law, Caldwell claims that she believed she was in full compliance with the Tennessee Supreme Court’s 2009 Order of Enforcement and that the Board was fully aware that she had resumed her law practice. Despite this contention, Caldwell entered a conditional guilty plea on this charge, effectively admitting to the unauthorized practice of law. Consequently, Caldwell’s belief that she was in full compliance does not constitute a mitigating factor in her favor.
¶ 19. The Tennessee Board considered, either directly or implicitly, the remaining criteria for determining appropriate discipline, except for the sanctions which this Court previously has imposed in similar cases.
¶ 20. In Terrell v. Mississippi Bar, 662 So.2d 586 (Miss.1995), this Court suspended an attorney for six months for conduct amounting to neglect and failure to keep a client advised of the status of his case.
¶21. In Mississippi Bar v. Hall, 612 So.2d 1075 (Miss.1992), this Court suspended an attorney for sixty days for neglecting a client’s case, after the attorney previously had been disciplined for similar conduct. The Court imposed an additional ninety-day suspension one year later on the same attorney for similar conduct. Hall v. Miss. Bar, 631 So.2d 120 (Miss.1993).
¶ 22. In Mississippi Bar v. Thompson, 5 So.3d 330 (Miss.2008), this Court reversed and remanded an attorney discipline case to the Bar’s complaint tribunal, holding that the one-year retroactive suspension imposed by the tribunal was insufficient punishment for misconduct involving, inter alia, failure to supervise a nonlawyer assistant.
¶ 23. The Mississippi Bar makes no specific recommendation other than for Caldwell to be disciplined and required to pay the costs and expenses connected with this action. In 2009, Tennessee suspended Caldwell for two years — six months’ active suspension followed by eighteen months of probation — for her misconduct. In 2011, Tennessee publicly censured Caldwell for resuming her law practice prior to completing the conditions of her probation. There are no “extraordinary circumstances which compel, justify or support variance” from Tennessee’s sanction. See Ishee, 987 So.2d at 911; Gaharan, 38 So.3d at 630. Therefore, Caldwell shall be suspended from the practice of law for six months, followed by eighteen months of probation to be served under terms and conditions as determined by the Bar’s Committee on Professional Responsibility. See M.R.D. Procedural Rule 12.3 (“It shall be the duty of the Committee on Professional Responsibility to monitor such suspensions with probation.”). Furthermore, Caldwell shall be publicly reprimanded, and assessed all costs and expenses of this disciplinary action. Finally, pursuant to procedural Rule 12.2, Caldwell may be reinstated only upon her filing a petition with this Court for reinstatement following her suspension.

B. Retroactive v. Prospective Discipline

¶ 24. An issue that arises in this case, but that neither the Bar nor Caldwell *555 addresses, is whether Caldwell’s punishment should be made retroactive or prospective. Caldwell’s suspension in Tennessee, including the probationary period, would have been complete on March 24, 2011, two years after the Tennessee Supreme Court issued its order of enforcement. The Mississippi Bar filed its complaint against Caldwell on January 9, 2012, nearly ten months after the natural expiration of Caldwell’s suspension in Tennessee.
¶ 25. In reciprocal discipline cases, we often have made discipline in this state prospective, even when the period of discipline imposed by another state had expired by the time this Court imposed its discipline. See, e.g., Ishee, 987 So.2d at 910, 912 (imposing a four-month suspension from the date of the order even though four-month suspension in Tennessee already had been completed at time of the order); Mississippi Bar v. Drungole, 913 So.2d 963, 965, 970 (Miss.2005) (thirty-day suspension imposed from date of order even though thirty-day suspension in bankruptcy court already had been completed); Mississippi Bar v. Daniels, 890 So.2d 872, 873-74 (Miss.2004) (two-year suspension imposed from date of order even though two-year suspension in Connecticut already had been completed at time of the order). By contrast, in Hodges, we imposed a one-year suspension on an attorney for reciprocal discipline but made the suspension retroactive to mirror the Tennessee Supreme Court’s imposition of a retroactive suspension. Hodges, 949 So.2d at 687.
¶26. In Thompson, we looked to the following factors, set out by the New Jersey Supreme Court, for guidance in determining whether retroactive discipline is appropriate:
Whether the conduct is part of a continuing pattern or whether there is only a single instance of misconduct; whether there is a significantly attenuated relationship between the misconduct and the practice of law; and whether the passage of time mitigates the severity of the discipline required. The last factor — the remoteness of the misconduct — has two facets. The first is whether the passage of time itself has accomplished rehabilitation of the lawyer. The second is whether the transgressions are so remote in time that intervening developments and current circumstances dilute the public interest in proper and prompt discipline.
Thompson, 5 So.3d at 339-340 (quoting People v. Abelman, 804 P.2d 859, 862 (Colo.1991) (citing In re Silverman, 113 N.J. 193, 549 A.2d 1225, 1245-46 (1988))).
¶ 27. Regarding the first factor, Caldwell’s conduct is clearly part of a continuing pattern. In several of its petitions for discipline, the Tennessee Board found, as an aggravating circumstance, that Caldwell’s conduct displayed a pattern of misconduct. Caldwell has been the subject of several disciplinary matters, including a prior reciprocal disciplinary proceeding and an informal admonition in this Court. Miss. Bar v. Caldwell, 890 So.2d 855, 856 (Miss.2004).[2] Accordingly, the “pattern-of-conduct” factor weighs in favor of prospective discipline.
¶ 28. Regarding the “attenuated-relationship” factor, Caldwell’s misconduct includes neglecting clients’ cases, failing to supervise her nonlawyer assistant, and engaging in the unauthorized practice of law. Thus, there is no “attenuated relationship,” and certainly not a significant one, be *556 tween Caldwell’s misconduct and the practice of law. In fact, all of Caldwell’s misconduct deals squarely with her actions in the course of practicing law. This is in contrast to the case in Hodges, where the disciplinary action arose from Hodges’s consumption of alcohol in violation of his monitoring agreement with the Tennessee Lawyers Assistance Program. Hodges, 949 So.2d at 684. Considering Caldwell’s misconduct, the “attenuated-relationship” factor weighs in favor of prospective discipline.
¶ 29. The third factor for the Court to weigh in considering whether to impose retroactive discipline is the remoteness of the misconduct. In considering the first facet of this factor — whether the passage of time itself has accomplished rehabilitation of the attorney — we note that the record appears to indicate Caldwell is currently in good standing with the Tennessee Bar. Attached to Caldwell’s answer to the Bar’s complaint is a letter from the chief disciplinary counsel of the Tennessee Board addressed to this Court in connection with Caldwell’s “application for admission to the Mississippi Bar.” This letter states that the Tennessee Board has “previously issued Ms. Caldwell a Letter of Good Standing concerning her status in Tennessee.” The letter then addresses Caldwell’s 2003 disciplinary matter in Tennessee and states that Caldwell complied with all conditions imposed by the Tennessee Supreme Court at that time. The letter is silent with regard to Caldwell’s compliance with the conditions imposed on her by the Tennessee Supreme Court in 2009 and 2011. However, the reference to the “Letter of Good Standing” indicates that Caldwell is in good standing with the Tennessee Bar, and the letter post-dates Caldwell’s most recent disciplinary matter in Tennessee. This suggests that Caldwell, in the eyes of the Tennessee Supreme Court, has been “rehabilitated” by her probationary period. Accordingly, the first facet of the remoteness requirement weighs in favor of retroactive discipline.
¶ 30. The second facet of the remoteness requirement is “whether the transgressions are so remote in time that intervening developments and current circumstances dilute the public interest in proper and prompt discipline.” Thompson, 5 So.3d at 339-340. We previously have imposed prospective discipline as late as five years after the misconduct at issue. In Daniels, we imposed reciprocal discipline in the form of a two-year suspension for the attorney’s misconduct in Connecticut. Daniels, 890 So.2d at 873-74. The Court’s order was handed down in 2004 and the misconduct at issue had occurred in 1998. Id. at 874; Daniels v. Statewide Grievance Comm., 72 Conn.App. 203, 804 A.2d 1027, 1029-1030 (2002). Nevertheless, we made the suspension effective from the date of our order. Daniels, 890 So.2d at 874. We can find no “intervening developments and current circumstances” that “dilute the public interest in proper and prompt discipline” in this case. See Thompson, 5 So.3d at 339-340. Hence, the second facet of the remoteness factor weighs in favor of prospective discipline.
¶ 31. For these reasons, we determine that Caldwell’s suspension shall be imposed prospectively, effective from the date of this order.[3]
*557 II. Caldwell’s Petition for Reinstatement
¶ 32. Caldwell has petitioned for reinstatement from her suspension, which we ordered on May 27, 2004. The Bar filed a motion to dismiss her petition. The Bar contended that Caldwell was not eligible for reinstatement for two reasons: 1) Caldwell’s continued misconduct demonstrated that she had not rehabilitated herself since her 2004 suspension in Mississippi; and 2) Caldwell’s petition lacked the requirements of procedural Rule 12.7. Accordingly, the Bar requested this Court dismiss Caldwell’s petition.
¶ 33. The Bar is correct that Caldwell’s petition lacks the requirements of procedural Rule 12.7. In In re Benson, 890 So.2d 888, 890 (Miss.2004), we announced the five requirements a petition for reinstatement must include to comply with the rule:
The petitioner must: (1) state the cause or causes for suspension or disbarment; (2) give the name and current address of all person, parties, firms, or legal entities who suffered pecuniary loss due to the improper conduct; (3) make full amends and restitution[;] (4) show that he [or she] has the necessary moral character for the practice of law; and (5) demonstrate the requisite legal education to be reinstated to the privilege of practicing law.
Id. Caldwell’s petition fails to include the cause for her suspension in Mississippi[4] or any information on the persons or entities who suffered pecuniary loss due to her conduct. The petition also says nothing of her moral character, with the arguable exception that she is currently in good standing with the Tennessee Bar.
¶34. A petitioner for reinstatement must prove that he or she has met the requirements of procedural Rule 12.7. In re Shelton, 987 So.2d 898, 900 (Miss.2006). Caldwell has failed to meet these requirements. For this reason, we grant the Bar’s motion to dismiss Caldwell’s petition for reinstatement. See Jennings v. Miss. State Bar, 533 So.2d 443 (Miss.1988) (dismissing petition for failing to meet requirements).
CONCLUSION
¶ 35. Because Caldwell’s petition for reinstatement lacks the requirements of the Mississippi Rules of Discipline, we grant the Bar’s motion to dismiss the petition.
¶ 36. With respect to the Bar’s complaint, we hold that Caldwell should be reciprocally disciplined based on her misconduct in Tennessee. We find that Caldwell shall be suspended from the practice of law for six months, followed by eighteen months of probation under terms and conditions to be imposed by the Committee on Professional Responsibility. Caldwell also shall be publicly reprimanded and assessed the costs and expenses incurred by the Mississippi Bar’s filing of the Formal Complaint.
¶ 37. Procedural Rule 8.6(h) states that an attorney shall be publicly reprimanded by the circuit court of the disciplined attorney’s county of residence. Although Caldwell’s address is in Memphis, Tennessee, she practices in the courts of DeSoto County. Therefore, we direct that Caldwell shall appear on the first day of the next term of the circuit court of DeSoto *558 County on which a jury venire is present, after this decision is final, to be publicly reprimanded in open court by the presiding judge.
¶ 38. AS TO 2011-BR-01834-SCT: PETITION OF KATHLEEN L. CALDWELL FOR REINSTATEMENT TO THE PRACTICE OF LAW IN THE STATE OF MISSISSIPPI IS DISMISSED. AS TO 2012-BD-00049-SCT: KATHLEEN L. CALDWELL IS HEREBY SUSPENDED FROM THE PRACTICE OF LAW IN THE STATE OF MISSISSIPPI FOR SIX (6) MONTHS, TO BE FOLLOWED BY EIGHTEEN (18) MONTHS OF PROBATION TO BE SERVED UNDER TERMS AND CONDITIONS AS DETERMINED BY THE COMMITTEE ON PROFESSIONAL RESPONSIBILITY. CALDWELL SHALL BE PUBLICLY REPRIMANDED IN OPEN COURT BY THE PRESIDING JUDGE ON THE FIRST DAY OF THE NEXT TERM OF THE CIRCUIT COURT OF DESOTO COUNTY IN WHICH A JURY VENIRE IS PRESENT, AFTER THIS DECISION IS FINAL. CALDWELL IS ASSESSED WITH ALL COSTS.
CARLSON AND DICKINSON, P.JJ, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ„ CONCUR. KING, J., NOT PARTICIPATING.

. Although bar matters are not criminal in nature, the Supreme Court of Tennessee refers to Caldwell’s agreement with the Board of Professional Responsibility as a “conditional guilty plea.”

. In the prior reciprocal disciplinary action against Caldwell, we made the suspension retroactive because Caldwell voluntarily had suspended her practice as of the date of her suspension from the Tennessee Bar. Caldwell, 890 So.2d at 857.

. Rule 11(c)(4) of the Rules of Discipline requires a disbarred or suspended attorney to "notify all [a]ffected courts” of any disbarment or suspension. M.R.D. 11(c)(4). Where, as here, an attorney fails to notify this Court of a disbarment or suspension in another jurisdiction, we reserve the discretion to impose discipline in this state prospectively, without any analysis the Thompson factors that are discussed under Issue I, B.

. Under Rule 12.7, Caldwell was required to state the cause or causes for her May 2004, ninety-day suspension by this Court. But, additionally, Rule 11(c)(4) required Caldwell to "notify all [a]ffected courts” of any disbarment or suspension; thus, Caldwell also was required to inform this Court about the disciplinary action she has received in Tennessee since May 2004.