# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-BD-00483-SCT

*THE MISSISSIPPI BAR*

*v.*

*KATHLEEN L. CALDWELL*

| | |
|---|---|
| ATTORNEY FOR COMPLAINANT: | MELISSA SELMAN SCOTT |
| ATTORNEY FOR RESPONDENT: | KATHLEEN L. CALDWELL (PRO SE) |
| NATURE OF THE CASE: | CIVIL - BAR MATTERS |
| DISPOSITION: | SUSPENDED FOR SIX MONTHS AND ASSESSED ALL COSTS - 03/04/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.    The Mississippi Bar seeks reciprocal discipline against attorney Kathleen L. Caldwell after the Board of Professional Responsibility of the Supreme Court of Tennessee (Tennessee Board) imposed a public censure.  Because of Caldwell's history of misconduct, this Court finds a harsher discipline is warranted.  Accordingly, this Court finds that Caldwell should be suspended from the practice of law for six months and that she should reimburse the Mississippi Bar for all costs and expenses incurred in this proceeding.

## FACTS AND PROCEDURAL HISTORY

¶2.    Caldwell is a member of the Mississippi Bar and was first licensed to practice law in Mississippi on September 29, 1983.  She is also licensed to practice law in Tennessee, where she resides.

¶3. A complaint was filed against Caldwell in Tennessee alleging certain acts of misconduct. On April 1, 2020, the Tennessee Board considered the matter and found as follows:

> Ms. Caldwell verbally agreed to represent a client in a post-conviction criminal case and on appeal for a flat fee of $7,500.00. Ms. Caldwell's office received $3,500.00 toward the fee and deposited the refundable fee directly into an operating account without a written fee agreement signed by the client. Ms. Caldwell met with the client in the Shelby County Jail but had not reviewed materials related to the client's criminal case, had not filed any post-trial motions, had not entered an appearance with the criminal court, and had not begun the appeal process. Less than one month after the representation began, Ms. Caldwell's representation was terminated, and the client requested a refund of the unearned portion of the fee. Ms. Caldwell only offered to refund $950.00 to the client and provided an invoice for services billed at the rate of $300.00 per hour which Ms. Caldwell acknowledged had never previously been discussed with the client.

¶4. The Tennessee Board determined that Caldwell had violated Rules 1.2, 1.4, 1.5, and 1.15 of the Tennessee Rules of Professional Conduct, and it ordered a public censure as a result of the misconduct. The Tennessee Board further ordered that Caldwell reimburse her former client $2,750 in fees.

¶5. On May 12, 2020, the Mississippi Bar filed a formal complaint against Caldwell under Rule 13 of the Rules of Discipline for the Mississippi State Bar. In the complaint, the Mississippi Bar requested that Caldwell be "appropriately disciplined" and that she pay all costs and expenses associated with the proceeding.[1] Caldwell was personally served with a copy of the complaint. No response was filed by Caldwell or on her behalf.

---

[1] The Mississippi Bar later filed a separate motion for reimbursement of costs and expenses and requested reimbursement for costs and expenses in the amount of $245 to be paid within thirty days of this Court's decision. This decision resolves the motion.

¶6. Caldwell has a history of violations of the Rules of Professional Conduct. In October 2003, the Tennessee Supreme Court suspended Caldwell from the practice of law for ninety days. *Miss. Bar v. Caldwell*, 890 So. 2d 855, 856-57 (Miss. 2004). Caldwell's suspension in Tennessee was based on "eighteen separate complaints of misconduct." *Caldwell v. Miss. Bar*, 118 So. 3d 549, 551 (Miss. 2012). "Her '"chronic ethical misconduct"' included: (1) failing to file pleadings and documents, (2) losing evidence; (3) allowing a statute of limitations to run; and (4) neglecting to keep her clients informed." *Id.* (quoting *Caldwell*, 890 So. 2d at 856 n.1). Additionally, Caldwell "had been admonished informally four times prior to 2004—three times by the Supreme Court of Tennessee and once by this Court." *Id.* (citing *Caldwell*, 890 So. 2d at 856).

¶7. In May 2004, this Court suspended Caldwell from the practice of law for ninety days as reciprocal discipline based on the suspension of equal length imposed by the Tennessee Supreme Court. *Caldwell*, 890 So. 2d at 857.

¶8. In March 2005, the Tennessee Board filed a petition for discipline against Caldwell alleging client neglect. *Caldwell*, 118 So. 3d at 551. Specifically, the Tennessee Board alleged:

> that Caldwell had neglected two clients' $2.6 million race-discrimination lawsuit. The aggrieved clients complained that Caldwell had done nothing on their case for four or five years. During that time, they had not been able to speak with Caldwell; they had dealt only with Caldwell's secretary, Carolyn Holland. The clients said that they eventually were informed about a $10,000 settlement offer. Upon learning this, they contacted the court and discovered that their case had been dismissed with prejudice weeks earlier for failure to prosecute. After reporting Caldwell's misconduct, they each received checks totaling $7,000 from Caldwell's personal checking account. The clients alleged, and the Board agreed, that Caldwell most likely paid the clients from

3

her own personal funds.

*Id.*

¶9.    The Tennessee Board filed a supplemental petition for discipline six months later and alleged that Caldwell "had failed to properly supervise a nonlawyer assistant, that she had neglected a client's case, that she had engaged in misrepresentation, and that she had failed repeatedly to respond in a timely manner to an ethics complaint against her." *Id.* at 551-52.

¶10.    "The [Tennessee] Board filed yet another supplemental petition for discipline in March 2006." *Id.* at 552.  The petition alleged that

> Caldwell's negligence and failure to communicate had caused a client's case to be dismissed. The client, as a result, had filed an ethics complaint. After the complaint was filed, Caldwell informed the client that she no longer could represent the client in two pending matters. Yet, in one of those pending cases, Caldwell did not tell the opposing party that she had withdrawn from representation. Instead, Caldwell continued representation, settled the case, had the settlement check made payable to herself and the former client, and paid herself a third of the total amount. Caldwell blamed these acts and omissions on her former secretary, Holland. To the extent that Holland was responsible, the Board charged Caldwell with violating the rules of professional conduct by allowing a nonlawyer assistant to engage in such misconduct.

*Id.*

¶11.    Caldwell pled guilty to the petition and supplemental petitions for discipline.  *Id.* "[I]n March 2009, the Supreme Court of Tennessee suspended Caldwell from the practice of law for twenty-four months—an actual suspension of six months, followed by a probation period of eighteen months." *Id.*

¶12.    "Seventeen months into the twenty-four month suspension, . . . the [Tennessee] Board filed another petition for discipline against Caldwell." *Id.*  According to the petition,

4

Caldwell had resumed practicing law under probation in October 2009, but the Board asserted that she had been ineligible to do so because she had failed to pay costs and expenses within ninety days of the court's March 2009 order. Caldwell had not satisfied that condition until March 2010; thus, she had engaged in the unauthorized practice of law from October 2009 to March 2010.

*Id.* Caldwell pled guilty to this petition and was publicly censured in June 2011. *Id.*

¶13. "[T]he Mississippi Bar filed a complaint requesting that Caldwell be disciplined reciprocally based on the Supreme Court of Tennessee's March 2009 and June 2011 disciplinary orders." *Id.* In October 2012, this Court suspended Caldwell from the practice of law in Mississippi for six months, followed by eighteen months of probation, and issued a public reprimand. *Id.* at 558.

## DISCUSSION

¶14. "In bar disciplinary matters, this Court has exclusive and inherent jurisdiction." ***Miss. Bar v. Dolan***, 987 So. 2d 921, 923 (Miss. 2008) (citing ***Miss. Bar v. Abioto***, 987 So. 2d 913, 914 (Miss. 2007)). "We review matters of attorney discipline de novo." *Id.* (citing ***Miss. Bar v. Hodges***, 949 So. 2d 683, 685 (Miss. 2006)).

¶15. Under Rule 13 of the Rules of Discipline for the Mississippi State Bar, when sanctions are imposed against an attorney by another jurisdiction, such sanctions are grounds for disciplinary action in this state. Miss. R. Discipline 13(a). "A final adjudication in another jurisdiction that an attorney admitted to practice in the State of Mississippi has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in the State of Mississippi." Miss. R. Discipline 13(b). As a result, it is "unnecessary for this Court to pursue any further fact-finding, and the sole issue before this

5

Court is the extent of the discipline to be imposed upon [Caldwell] for h[er] actions." ***Dolan***, 987 So. 2d at 923.

¶16.    "[T]he sanction imposed in this State generally mirrors the sanction imposed in the sister state, absent extraordinary circumstances which compel, justify or support variance from the foreign jurisdiction's sanction." ***Miss. Bar v. Ishee***, 987 So. 2d 909, 911 (Miss. 2007) (citing ***Miss. Bar v. Drungole***, 913 So. 2d 963, 970 (Miss. 2005)).  But "[w]e may impose sanctions less than or greater than those imposed by another jurisdiction." ***Id.*** (citing ***Miss. Bar v. Gardner***, 730 So. 2d 546, 547 (Miss. 1998)).  When determining reciprocal discipline, this Court has established nine criteria to consider:

> (1) the nature of the misconduct involved; (2) the need to deter similar conduct; (3) the preservation of the dignity and reputation of the profession; (4) protection of the public; (5) the sanctions imposed in similar cases; (6) the duty violated; (7) the lawyer's mental state; (8) the actual or potential injury resulting from the misconduct; and (9) the existence of aggravating and/or mitigating factors.

***Id.*** at 911-12 (quoting ***Hodges***, 949 So. 2d at 686).

*1.      The Nature of the Misconduct Involved*

¶17.    Caldwell violated Rules 1.2, 1.4, 1.5, and 1.15 of the Tennessee Rules of Professional Conduct.  The corresponding Mississippi Rules of Professional Conduct state the following:

**Rule 1.2. Scope of Representation**

**(a)** A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, a lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

6

**(b)** A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activities.

**(c)** A lawyer may limit the objectives or scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent.

**(d)** A lawyer shall not counsel a client to engage, or assist a client, in conduct that a lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

**(e)** When a lawyer knows that a client expects assistance not permitted by the Rules of Professional Conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct.

## Rule 1.4. Communication

**(a)** A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

**(b)** A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

## Rule 1.5. Fees

**(a)** A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

**(b)** When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.

**(c)** A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

**(d)** A lawyer shall not enter into an arrangement for, charge, or collect:

(1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or

(2) a contingent fee for representing a defendant in a criminal case.

**(e)** A division of fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;

(2) the client is advised of and does not object to the participation of all the lawyers involved; and

(3) the total fee is reasonable.

**Rule 1.15. Safekeeping Property**

> **(a)** A lawyer shall hold clients' and third persons' property separate from the lawyer's own property. Funds shall be kept in a separate trust account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such trust account funds and other property shall be kept and preserved by the lawyer for a period of seven years after termination of the representation.

Miss. R. Pro. Conduct 1.2, 1.4, 1.5, 1.15(a).

> 2.    *The Need to Deter Similar Conduct*

¶18.    "[D]ishonest conduct by an attorney with his own client goes to the very core of a lawyer's fitness to practice law." ***Carter v. Miss. Bar***, 654 So. 2d 505, 512 (Miss. 1995) (alteration in original) (internal quotation marks omitted) (quoting ***Reid v. Miss. Bar***, 586 So. 2d 786, 788 (Miss. 1991)). "The failure to follow the Rules involving duties to clients . . . involve[s] the most important ethical standards this profession espouses." ***Id.*** (citing ***Stegall v. Miss. Bar***, 618 So. 2d 1291, 1294 (Miss. 1993)). Based on Caldwell's repeated misconduct, something more than a public censure or reprimand is needed to deter similar conduct.

> 3.    *The Preservation of the Dignity and Reputation of the Profession*

¶19.    Neither the public censure issued by the Tennessee Board nor the formal complaint filed by the Mississippi Bar asserts that Caldwell committed misconduct in Mississippi. Nevertheless, Caldwell is licensed to practice law throughout this state. "[T]he imposition of sanctions in this case is absolutely necessary to bolster 'the confidence of the general public in the ability of [the Bar] to govern itself.'" ***Id.*** (quoting ***Pitts v. Miss. State Bar***

9

*Ass'n*, 462 So. 2d 340, 343 (Miss. 1985)). Based on Caldwell's history of misconduct, a public reprimand by the circuit court will simply not accomplish the goal of preserving the dignity and reputation of the profession.

4.   *Protection of the Public*

¶20.   This Court has an interest in protecting Mississippi citizens from substandard legal representation by an attorney licensed to practice in this state. Caldwell's actions evince a lack of concern for her professional duties. Neither a public censure imposed by the Tennessee Board nor a public reprimand, which Caldwell has previously received, will fulfill this Court's responsibility of protecting the public.

5.   *The Sanctions Imposed in Similar Cases*

¶21.   In *Carter v. Mississippi Bar*, Carter repeatedly "took money from clients, promised to act as their counsel, and did nothing." *Carter*, 654 So. 2d at 511. Over time, Carter failed to probate an estate, failed to communicate with clients, failed to file the proper documents with the court, failed to use a trust account to handle settlement funds, failed to abide by the client's decisions regarding the objectives of representation, and allowed a case to be dismissed. *Id.* at 507-10. This Court found that Carter's repeated misconduct warranted disbarment. *Id.* at 513.

¶22.   In *Stegall v. Mississippi Bar*, the nature of the misconduct included "neglect of the cases entrusted to Stegall, failure to reasonably inform the clients of the status of their cases, failure to return client property and to render an accounting of client funds, and misrepresentation in the explanation of the services provided in exchange for the quoted

fees." ***Stegall***, 618 So. 2d at 1294. The Court found that disbarment was appropriate based on Stegall's failure "to learn any lesson from the four (4) prior complaint proceedings and their ensuing reprimands and admonitions." ***Id.*** at 1296.

¶23. Additionally, in ***Mississippi Bar v. Hall***, Hall was suspended for sixty days for neglecting his client's case, after having been previously sanctioned for similar conduct. ***Miss. Bar v. Hall***, 612 So. 2d 1075, 1077-78 (Miss. 1992). An additional ninety-day suspension was later imposed against Hall for similar conduct. ***Hall v. Miss. Bar***, 631 So. 2d 120, 126-27 (Miss. 1993).

¶24. In ***Terrell v. Mississippi Bar***, this Court suspended an attorney for six months for her neglect and her failure to keep a client advised of the status of his case. ***Terrell v. Miss. Bar***, 662 So. 2d 586, 588 (Miss. 1995). There, Terrell agreed to represent Greg Coleman, a criminal defendant, in his appeal. ***Id.*** Terrell was paid a total of $1,500. ***Id.*** Coleman attempted to contact Terrell on several occasions. ***Id.*** Terrell eventually met with Coleman in Parchman approximately six months after their initial meeting. ***Id.*** While Terrell filed a notice of appeal on behalf of Coleman, she failed to prosecute the appeal by not paying the requisite appeal costs. ***Id.*** As a result, the appeal was dismissed. ***Id.*** The Court considered the fact that Terrell had been previously suspended from the practice of law for one year, and it found that based on the record and the circumstances involved, "the imposition of anything less than a suspension of six (6) months upon Ms. Terrell would be inappropriate." ***Id.*** at 594.

¶25. In ***Mississippi Bar v. Dolan***, a reciprocal-discipline case from Tennessee, Dolan

11

admitted violating Rules 1.1 (Competence), 1.2 (Scope of the Representation), 1.3 (Diligence), 1.4 (Communication), 1.5 (Fees), 1.15 (Safekeeping Property), 1.16 (Declining and Terminating Representation), and 8.4 (Misconduct). *Dolan*, 987 So. 2d at 923-24. This Court found that "the sanctions of a one-year suspension, one-year probation and assessment of costs [were] appropriate." *Id.* at 924.

¶26. Recently, in *Mississippi Bar v. Abioto*, another reciprocal-discipline case from Tennessee, this Court suspended Abioto for one year for violating Rules 1.1 (Competence), 1.2 (Scope of Representation), 1.3 (Diligence), 1.4 (Communication), 3.1 (Meritorious Claims and Contentions), 3.4(c) (Fairness to Opposing Party and Counsel), 7.1 (Communications Concerning a Lawyer's Services), and 8.4(a) and (d) (Misconduct). *Miss. Bar v. Abioto*, 308 So. 3d 840, 843, 846 (Miss. 2020). Like Caldwell, Abioto had a history of prior violations, and she had been previously sanctioned. *Id.* at 846. This Court found that "Abioto's serial violations justif[ied] imposing more severe discipline than the discipline imposed by the Tennessee Board . . . . The aggravating factors substantially outweigh[ed], both in quantity and quality, any mitigating circumstances, none of which were offered by Abioto." *Id.*

    6.    *The Duty Violated*

¶27. Caldwell violated Rules 1.2, 1.4, 1.5, and 1.15 of the Tennessee Rules of Professional Conduct. "[T]he most important ethical duties are those obligations which a lawyer owes to *clients*." *Stegall*, 618 So. 2d at 1295. Rules 1.2 and 1.4 of the Mississippi Rules of Professional Conduct articulate duties owed to the client. *Abioto*, 308 So. 3d at 846.

12

*7.    The Lawyer's Mental State*

¶28.    No evidence demonstrates that an impaired mental state caused or contributed to Caldwell's violations.

*8.    The Actual or Potential Injury Resulting from the Misconduct*

¶29.    Caldwell's conduct delayed the resolution of her client's criminal case.  Moreover, Caldwell's conduct potentially caused her client to suffer the denial or dismissal of various posttrial motions and/or an appeal.

*9.    The Existence of Aggravating and/or Mitigating Factors*

¶30.    Caldwell failed to respond to the Mississippi Bar's formal complaint despite being personally served with a copy.  She further failed to offer any mitigating evidence to diminish her culpability.

¶31.    As mitigating factors, this Court recognizes that some of the findings under Tennessee Rules may not be considered violations of the Mississippi Rules of Professional Conduct.  For instance, Mississippi Rule of Professional Conduct 1.5(b) does not require a written fee agreement for representation in a criminal case.  Rule 1.5(b) states that such is preferable and requires a communication over the fee agreement.  Further, Rule 1.15 does not require an attorney deposit a fixed-fee payment in a trust account, provided that is the agreement of the attorney and client.  To borrow language from 1.5(b), it would be preferable that such a fixed-fee payment be considered an advance payment, be deposited in a trust account, and then be paid as the work is performed, but the Mississippi Rules of Professional Conduct do not require it.  In this Court's consideration of Caldwell's punishment, we take these

mitigating factors into consideration and realize that the essential harm was that Caldwell accepted payment but failed to provide the legal services that were agreed upon.

¶32.    Regarding aggravating factors, this Court can consider "an attorney's history of prior violations of the Rules . . . to be an aggravating factor when determining disciplinary measures." ***Stewart v. Miss Bar***, 969 So. 2d 6, 14 (Miss. 2007).

¶33.    As previously discussed, Caldwell has a history of prior violations. Caldwell has been previously disciplined twice by this Court.  The prior discipline included a ninety-day suspension and a six-month suspension and public reprimand.  Despite the prior disciplinary action, Caldwell continues to disregard her client's interests and her legal obligations. Accordingly, a public reprimand is insufficient.

**CONCLUSION**

¶34.    "[T]he purpose of discipline is not to punish the guilty attorney, but to protect the public, the administration of justice, to maintain appropriate professional standards, and to deter similar conduct." ***Miss. State Bar Ass'n v. A Miss. Att'y***, 489 So. 2d 1081, 1084 (Miss. 1986) (citing ***In Re Ruffalo***, 390 U.S. 544, 88 S. Ct. 1222, 20 L. Ed. 2d 117 (1968)). Considering Caldwell's history of prior violations and the prior discipline imposed, this Court finds that a harsher discipline than the public censure imposed by the Tennessee Board is warranted.  While the Mississippi Bar does not allege damage to a Mississippi client, Caldwell is licensed to practice law in Mississippi and is therefore free to represent clients throughout this state.  Therefore, this Court has an obligation "to protect the public, the administration of justice, to maintain appropriate professional standards, and to deter similar

14

conduct." *Id.* (citing *In Re Ruffalo*, 390 U.S. 544).

¶35.    In light of the nine criteria considered for reciprocal discipline, this Court finds a six-month suspension from the practice of law is appropriate.  Caldwell is suspended from the practice of law for six months.  She shall reimburse the Mississippi Bar the sum of $245 for its costs and expenses incurred in this case, which shall be paid within thirty days after the entry of this decision.

¶36.    **KATHLEEN L. CALDWELL IS SUSPENDED FROM THE PRACTICE OF LAW IN THE STATE OF MISSISSIPPI FOR SIX MONTHS.  CALDWELL SHALL REIMBURSE THE MISSISSIPPI BAR $245 FOR COSTS AND EXPENSES INCURRED IN THIS PROCEEDING, WHICH SHALL BE PAID WITHIN THIRTY DAYS AFTER THE ENTRY OF THIS DECISION.**

**KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, CHAMBERLIN AND ISHEE, JJ., CONCUR. RANDOLPH, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BEAM, J.**

**RANDOLPH, CHIEF JUSTICE, DISSENTING:**

¶37.    The attorney occupies a unique place in our society; he has great opportunity for useful and honorable service, with an equally great responsibility to maintain the highest standard of professional conduct; he is entrusted with the problems, money, and property of all manner of people, the ignorant and helpless, the rich and the poor; he has many privileges and possesses power not accorded others; the responsibility of administering justice is largely in his hands; his conduct involves the integrity of the courts of which he is an officer, and the good name of the legal profession; and the very essence of his professional function is confidence and trust. One must possess good moral character to enter the practice of law; and to continue in the profession, this standard of moral character must be maintained. Inexperience, weakness, and personal hardship do not excuse conduct inconsistent with common honesty. The practice of law is not a constitutional or natural right, but a revocable privilege. When the conduct of an attorney becomes such that it tends to bring in disrepute the courts and the legal profession and jeopardizes the rights of those who entrust their affairs and money into his hands, he should be disbarred. Such action is necessary for the protection of the public, the courts, and the legal profession. Punishment of such attorney is not the purpose sought

15

to be accomplished by his disbarment.

***In re Poole***, 222 Miss. 678, 686, 76 So. 2d 850, 853 (1955).

¶38. I would find that Caldwell's privilege to practice law in the State of Mississippi should be suspended for a period of three years. Caldwell has consistently failed to maintain a high standard of professional conduct for the last two decades. Her repeated offenses bring disrepute to our profession. I would find that her suspension is necessary "for the protection of the public, the courts, and the legal profession." ***Id.***

### *Prior Offenses and Subsequent Disciplinary Actions*

¶39. Caldwell has been licensed to practice law in Tennessee and Mississippi for a number of years. She was first suspended from the practice of law in Tennessee in April 2002 and reinstated one month later. In October 2003, she was suspended for ninety days from the practice of law in Tennessee. Formal disciplinary proceedings were instituted against Caldwell by six individual clients for neglect of client matters; for failing to adequately communicate with her clients; for failing to seek court permission to withdraw in a matter before the tribunal when ceasing to represent clients; for charging excessive fees; for representing clients with differing interests; and for losing client property.

¶40. The Mississippi Bar subsequently sought disciplinary action against Caldwell. This Court described the pertinent events as follows:

> In a criminal appeal, Caldwell failed to submit a sentencing hearing transcript, causing the appeals court to affirm the sentencing. In an employment discrimination case, Caldwell's office lost evidence provided by the complainant and failed to file a complaint. In an alimony contempt action, Caldwell failed to obtain a hearing and to keep her client informed as to a court date, and lost evidence provided to her by the client. In a lawsuit,

Caldwell failed to inform her client of the court date, resulting in a $47,000 judgment being taken against him. In a workers' compensation case, Caldwell failed to file an appeal in a timely manner and lost the case file. Finally, Caldwell allowed the statute of limitations elapse in another matter.

*Miss. Bar v. Caldwell*, 890 So. 2d 855, 856 n.1 (Miss. 2004). This Court found that, because Caldwell had been admonished by the Tennessee Court on three previous occasions, had "a record of chronic ethical misconduct[,]" and had previously received an informal admonition from the Court, Caldwell was suspended for ninety days. *Id.* at 856-57 (internal quotation marks omitted).

¶41. Beginning in March 2005 and culminating in March 2009, the Tennessee Board of Professional Responsibility filed three more petitions for discipline against Caldwell.

[The Board] alleged that Caldwell had neglected two clients' $2.6 million race-discrimination lawsuit. The aggrieved clients complained that Caldwell had done nothing on their case for four or five years. During that time, they had not been able to speak with Caldwell; they had dealt only with Caldwell's secretary, Carolyn Holland. The clients said that they eventually were informed about a $10,000 settlement offer. Upon learning this, they contacted the court and discovered that their case had been dismissed with prejudice weeks earlier for failure to prosecute. After reporting Caldwell's misconduct, they each received checks totaling $7,000 from Caldwell's personal checking account. The clients alleged, and the Board agreed, that Caldwell most likely paid the clients from her own personal funds.

Six months later, the Board filed a supplemental petition for discipline against Caldwell. The supplemental petition charged that Caldwell had failed to properly supervise a nonlawyer assistant, that she had neglected a client's case, that she had engaged in misrepresentation, and that she had failed repeatedly to respond in a timely manner to an ethics complaint against her.

The Board filed yet another supplemental petition for discipline in March 2006. That petition alleged that Caldwell's negligence and failure to communicate had caused a client's case to be dismissed. The client, as a result, had filed an ethics complaint. After the complaint was filed, Caldwell informed the client that she no longer could represent the client in two pending

17

matters. Yet, in one of those pending cases, Caldwell did not tell the opposing party that she had withdrawn from representation. Instead, Caldwell continued representation, settled the case, had the settlement check made payable to herself and the former client, and paid herself a third of the total amount. Caldwell blamed these acts and omissions on her former secretary, Holland. To the extent that Holland was responsible, the Board charged Caldwell with violating the rules of professional conduct by allowing a nonlawyer assistant to engage in such misconduct.

*Caldwell v. The Miss. Bar*, 118 So. 3d 549, 551-52 (Miss. 2012). Caldwell entered a conditional guilty plea to the petition and supplemental petitions for discipline and was suspended from the practice of law for a total of twenty-four months, with an actual suspension of six months and probation for eighteen months. *Id.* at 552.

Seventeen months into the twenty-four month suspension, in August 2010, the Board filed another petition for discipline against Caldwell. Caldwell had resumed practicing law under probation in October 2009, but the Board asserted that she had been ineligible to do so because she had failed to pay costs and expenses within ninety days of the court's March 2009 order. Caldwell had not satisfied that condition until March 2010; thus, she had engaged in the unauthorized practice of law from October 2009 to March 2010. Caldwell also entered a conditional guilty plea to this complaint. Consequently, in June 2011, the Supreme Court of Tennessee ordered that Caldwell be publicly censured and required her to pay the costs and expenses of the proceeding.

*Id.*

¶42. The Mississippi Bar filed another complaint, requesting that the Court discipline Caldwell based on the two Tennessee disciplinary orders. The Court held that Caldwell should be reciprocally disciplined. *Id.* at 557. Caldwell was suspended from the practice of law in Mississippi for six months, followed by an eighteen-month period of probation. *Id.* Additionally, Caldwell was publicly reprimanded. *Id.*

*Analysis*

18

¶43. Today's case concerns Caldwell's April 2020 public censure by the Tennessee Board. According to the censure,

> Ms. Caldwell verbally agreed to represent a client in a post-conviction criminal case and on appeal for a flat fee of $7,500. Ms. Caldwell's office received $3,500 toward the fee and deposited the refundable fee directly into an operating account without a written fee agreement signed by the client. Ms. Caldwell met with the client in the Shelby County Jail but had not reviewed materials related to the client's criminal case, had not filed any post-trial motions, had not entered an appearance with the criminal court, and had not begun the appeal process. Less than one month after the representation began, Ms. Caldwell's representation was terminated and the client requested a refund of the unearned portion of the fee. Ms. Caldwell only offered to refund $950 to the client and provided an invoice for services billed at the rate of $300 per hour which Ms. Caldwell acknowledged had never previously been discussed with the client. By these acts, Ms. Caldwell violated Rules of Professional Conduct 1.2 (scope of representation), 1.4 (communication), 1.5 (fees), and 1.15 (safekeeping property).

¶44. The Mississippi Bar once again is requesting this Court discipline Caldwell. The majority finds that, based on Caldwell's prior violations and discipline imposed, a harsher punishment is necessary. I agree. This succession of transgressions and our precedent, however, compel a sanction greater than not only that imposed by the Tennessee Board but also that ordered by the majority.

¶45. Caldwell's serial violations justify punishment more than a mere reprimand, as was imposed by the Tennessee Board, or the six-month suspension imposed by the majority. Her prior six-month sanction failed to deter her most recent breaches of confidence and trust. Caldwell's continued failure to maintain a high standard of professional conduct has brought disrepute to our profession. Her conduct merits a full suspension from the practice of law in Mississippi for three years. Such a sanction would better protect the public, the courts, and

19

the legal profession from her transgressions and would deter Mississippi attorneys from engaging in such self-serving conduct.

**BEAM, J., JOINS THIS OPINION.**