# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-BD-00467-SCT

*THE MISSISSIPPI BAR*

*v.*

*ROBERT W. MALONE*

| | |
|---|---|
| ATTORNEYS FOR COMPLAINANT: | ADAM BRADLEY KILGORE |
| | MELISSA SELMAN SCOTT |
| ATTORNEY FOR RESPONDENT: | ROBERT W. MALONE (PRO SE) |
| NATURE OF THE CASE: | CIVIL - BAR MATTERS |
| DISPOSITION: | SUSPENDED FOR TWO YEARS AND |
| | ASSESSED ALL COSTS - 04/07/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     On November 4, 2020, the Supreme Court of Louisiana suspended Robert W. Malone from the practice of law for two years. On April 30, 2021, the Mississippi Bar filed a formal complaint asking this Court to discipline Malone for his misconduct. In addition, the Bar asks that this Court order Malone to pay the costs and expenses incurred from the filing of this complaint.

## STATEMENT OF THE FACTS

¶2.     Malone is a resident of Louisiana. He became a member of the Mississippi Bar on September 26, 2000. Malone is licensed also in Louisiana but is ineligible to practice law in

that state due to his failure to comply with Louisiana's licensure requirements. *See* ***In re Malone***, 303 So. 3d 614 (La. Nov. 4, 2020) (mem.).

¶3.     In June 2018, Louisiana's Office of Disciplinary Counsel (ODC) filed formal charges against Malone for several instances of misconduct that had occurred between August 2013 and November 2017. *Id.* at 614-15. The first incident occurred in August 2013 when Sean Rachal hired Malone to represent him in a post-conviction relief proceeding. *Id.* at 614. Rachal said that Malone, after being paid a $5,000 flat fee, consistently ignored his warnings about an approaching deadline, which resulted in the untimely filing of Rachal's application for post-conviction relief. *Id.* "Furthermore, [Malone] ignored two letters Mr. Rachal sent him in late 2014 in which Mr. Rachal requested a copy of his file." *Id.* Rachal filed a complaint with ODC against Malone in November 2015. *Id.* After several failed attempts, Malone was served properly with notice of the complaint. *Id.* Malone indicated to the ODC that he would provide them a response, but none was forthcoming. *Id.*

¶4.     The second incident also occurred in 2014 when Eric Green hired Malone to "represent him in a criminal matter." *Id.* Green saw Malone "for the first and only time in order to pay the fee." *Id.* In March 2016, Green filed a disciplinary complaint against Malone because he had not heard from Malone "for more than eighteen months" and he wanted to terminate Malone's services and be refunded the unearned portion of the fee. *Id.* at 614-15. After Malone was served with the complaint, he indicated to the ODC he would provide a response, but again he failed to do so. *Id.* at 615.

¶5.    The last incident involved Malone's representation of Jon Welch in a criminal matter that was terminated due to Malone's lack of communication with his client. *Id.* In addition, the attorney hired to replace Malone, Walter M. Sanchez, made numerous attempts to "request an accounting and a refund of the unearned portion of the $7,000 fee." *Id.* But Malone did not respond. *Id.* Malone failed also to turn over to replacement counsel discovery material Malone had received from the prosecutor, which resulted in the rescheduling of Welch's trial. *Id.* Sanchez filed a complaint with the ODC in 2017. *Id.* After several unsuccessful attempts, Malone was served with the complaint, to which he did not respond. *Id.*

¶6.    In each instance, the ODC alleged that Malone had violated the following Rules of Professional Conduct:  Rule 1.3 (failure to act with reasonable diligence and promptness in representing a client), Rule 1.4 (failure to communicate with a client), Rule 1.16 (obligations upon termination of the representation), Rule 8.1(c) (failure to cooperate with the ODC in its investigation), and Rule 8.4(a) (violation of the Rules of Professional Conduct). *Id.* at 614-15.

¶7.    Because Malone had failed to answer the formal charges levied by the ODC, "the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence[.]" *Id.* at 615. There was no formal hearing, but each party "[was] given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions." *Id.* "In his submission on sanctions, [Malone] only addressed the Rachal matter[.]" *Id.* Malone explained that Rachal's application for

3

post-conviction relief was deemed untimely because the clerk of the trial court had informed him that he did not have to pay the tax transmission fee, which had made the application untimely. *Id.* Malone explained also that when Rachal's family "texted him with threats, he stopped working on [Rachal's] case and reported the threats to the police." *Id.* He also told the hearing committee that, at the time of filing, "he currently [was] out of the country with his family on his wife's military permanent change of station tour." *Id.*

¶8. "[T]he hearing committee noted that the factual allegations set forth in the formal charges were deemed admitted[,]" and "determined [Malone] violated Rules 1.3, 1.4, 1.5, 1.16, 8.1(c), and 8.4(a) of the Rules of Professional Conduct." *Id.* at 616. The committee determined that Malone had "knowingly violated duties owed to his clients" and his "conduct caused potential harm as follows":

> (1) he ignored two letters from Mr. Rachal in which Mr. Rachal requested a copy of his file; (2) he accepted a $500 fee from Mr. Green and then neglected Mr. Green's legal matter; (3) he failed to provide Mr. Sanchez with an accounting and refund of unearned fees paid on behalf of Mr. Welch; and (4) he failed to provide Mr. Sanchez with Mr. Welch's file.

*Id.* The committee found no mitigating factors present, but it did find several aggravating factors: "dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law (admitted 2002)[,]" plus Malone's "failure to cooperate with the ODC's investigations." *Id.* Therefore, the committee recommended a one year and one day suspension with Malone required to pay any restitution owed his former clients. *Id.* One committee member recommended a two-year suspension due to the aggravating factors. *Id.*

4

"Neither [Malone] nor the ODC filed an objection to the committee's report." *Id.* But Malone did "file a brief prior to oral argument before a panel of the disciplinary board." *Id.* "In his brief, [he] acknowledged he made mistakes in his handling of his clients' legal matters and failed to timely resolve the matters." *Id.* "However, in mitigation, he offered that his twenty-three years of service in the Louisiana Army National Guard left him with post-traumatic stress disorder, depression, and anxiety." *Id.* Malone explained that his mental health issues have caused him not to work in approximately a year, "but he is now taking medication to treat his depression and anxiety." *Id.* Additionally, Malone's wife, a member of the United States Army, was ordered to active duty in October 2018 and was stationed in Belize. *Id.* "[Malone] and his four children moved to Belize the following month, and he has not had access to his law office files since." *Id.*

¶9. Addressing the Rachal matter, Malone admitted that he had not handled the threats from Rachal's family properly. *Id.* But Malone "claimed he told Mr. Rachal's family they could come to his office to retrieve Mr. Rachal's file, but they never did so." *Id.* "Regarding the Green matter, [Malone] indicated he was only hired to file a motion for modification of sentence, which he did and which was granted." *Id.* at 616-17. "However, Mr. Green was upset it took the Louisiana Department of Corrections longer than he wanted to recalculate his time and release him." *Id.* at 617. As for the Sanchez/Welch matter, Malone explained that "he made numerous out-of-town trips related to Mr. Welch's representation and was actively working with multiple jurisdictions to limit Mr. Welch's exposure." *Id.* Regarding

5

the discovery documents, Malone claimed he was not aware of any; however, when he was closing his office, he discovered the documents underneath his receptionist's desk. ***Id.***

¶10.    After review, the disciplinary board determined that Malone had violated Rules 1.3, 1.4, 1.5, 8.1(c), 8.4(a) of the Rules of Professional Conduct. ***Id.*** Unlike the hearing committee, the disciplinary board

> determined [that] the ODC failed to prove by clear and convincing evidence that [Malone] violated Rule 1.16 because the deemed-admitted facts do not allege [Malone] ever withdrew formally from the three representations, reasoning that [Malone] completed the representation of Mr. Rachal, although unsuccessfully, and that both Mr. Green and Mr. Welch terminated [Malone's] services.

***Id.*** The disciplinary board determined that Malone "knowingly violated duties owed to his clients and the legal profession, and his conduct caused actual harm to his clients." ***Id.*** Also, "[t]he board agreed with the committee's determination of aggravating factors and found the presence of the additional aggravating factors of a prior disciplinary record (a 2012 admonition for failing to cooperate with the ODC in an investigation) and vulnerability of the victims." ***Id.*** at 618. Therefore, the disciplinary board recommended suspending Malone for two years and requiring him pay restitution. ***Id.***

¶11.    The Supreme Court of Louisiana found that

> The evidence in the record of this deemed admitted matter supports a finding that [Malone] neglected legal matters, failed to communicate with clients, failed to return client files upon request, failed to provide accountings and refunds of unearned fees upon request, and failed to cooperate with the ODC in its investigations. This misconduct is a violation of the Rules of Professional Conduct as found by the disciplinary board except with respect to Rule 1.16. We disagree with the board and instead find [Malone] violated Rule 1.16 when he failed to return client files upon request and failed to account for and refund unearned fees upon termination of the representations.

*Id.* The court ordered that, based on its "case law, a two-year suspension [was] warranted" in this case. *Id.* at 619. The court ordered also that Malone was to "make restitution to Eric Green in the amount of $500, provide Jon Welch with an accounting and refund of any unearned fees, and provide Sean Rachal and Jon Welch with a copy of their respective files."

*Id.*

¶12.   On April 30, 2021, the Mississippi Bar filed a formal complaint with this Court, asking us (1) to impose reciprocal discipline for Malone's misconduct and (2) for us to order that Malone pay for the Bar's costs and expenses of filing the compliant.[1]

¶13.   Malone was served on July 28, 2021. On August 16, 2021, Malone mailed his answer to the formal complaint to the Bar, which later was filed with this Court on October 13, 2021. In his answer, Malone admitted the factual allegations set forth in the complaint. In addition, he offered the following mitigating considerations:

---

[1]In its complaint, the Bar also asked this Court to suspend Malone immediately for his failure to comply with Rule of Discipline for the Mississippi State Bar 13(a) pending resolution of this matter. That rule requires:

> Upon being disciplined in another jurisdiction, an attorney admitted to practice in the State of Mississippi shall forthwith, but no later than 15 days upon the imposition of such discipline, provide Complaint Counsel a certified copy of the discipline. Failure to provide the certified copy forthwith shall, upon petition by Complaint Counsel, result in the immediate suspension of the attorney pending final resolution by the Court.

M.R.D. 13(a). This Court takes judicial notice that the **Mississippi Bar Lawyer Directory** currently lists Malone as being suspended for nonpayment of dues. The relief the Bar was seeking already had been satisfied. Therefore, we found that the Bar's request for an immediate suspension pending the resolution of this matter was mooted by Malone's suspension for nonpayment of his Bar dues.

- "Although, I passed the Bar in MS, I don't believe I ever practiced in MS. I moved back to Louisiana in August of 2000 and I don't think I have been on the active roll since 2001."

- His wife was deployed to Belize in October 2018 and then he and their children joined her in November 2018. They remained in Belize until June 14, 2021, when her deployment ended and they returned to Louisiana.

- He suffered from PTSD due to his time in the service.

- He has not practiced law in any jurisdiction in four years.

- He thought the Louisiana Bar automatically notified every other jurisdiction he was barred in of his suspension.

- He explained that he has no plans to return and practice law in Mississippi in the future.

¶14. On September 23, 2021, the Bar filed a motion for reimbursement of costs and expenses, asking this Court to order Malone to reimburse it in the amount of $360.

## DISCUSSION

¶15. "This Court possesses 'exclusive and inherent jurisdiction' over the discipline of attorneys under the Mississippi Rules of Discipline." *Miss. Bar v. Thomas*, 291 So. 3d 306, 307 (Miss. 2019) (quoting *McIntyre v. Miss. Bar*, 38 So. 3d 617, 623 (Miss. 2010)). Rule 13(b) of the Rules of Discipline for the Mississippi State Bar provides,

A final adjudication in another jurisdiction that an attorney admitted to practice in the State of Mississippi has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in the State of Mississippi. The sole issue to be determined in the disciplinary proceeding in the State of Mississippi shall be the extent of the final discipline to be imposed upon the attorney in this State, which may be more or less severe than the discipline imposed by the other jurisdiction.

M.R.D 13(b).

8

¶16.   This Court has held that, when applying the reciprocity doctrine, "the sanction imposed here generally mirrors the sanction imposed in the sister state, absent 'extraordinary circumstances which compel, justify or support variance from the foreign jurisdiction's sanction.'" **Thomas**, 291 So. 3d at 307 (quoting **Miss. Bar v. Drungole**, 913 So. 2d 963, 970 (Miss. 2005)). There are nine criteria this Court considers when addressing reciprocal discipline:

> (1) the nature of the misconduct involved; (2) the need to deter similar misconduct; (3) the preservation of the dignity and reputation of the profession; (4) protection of the public; (5) the sanctions imposed in similar cases; (6) the duty violated; (7) the lawyer's mental state; (8) the actual or potential injury resulting from the misconduct; and (9) the existence of aggravating and/or mitigating factors.

**Id.** (quoting **Miss. Bar v. Ogletree**, 226 So. 3d 79, 83 (Miss. 2015)). This Court has held that "[a]s long as each criterion is taken into consideration, we need not address each separately." **Caldwell v. Miss. Bar**, 118 So. 3d 549, 553 (Miss. 2012) (citing **Miss. Bar v. Hodges**, 949 So. 2d 683, 686 (Miss. 2006)). The Louisiana Supreme Court "directly or implicitly considered the above-referenced criteria." **Miss. Bar v. Mount**, 298 So. 3d 409, 412 (Miss. 2019) (internal quotation marks omitted) (quoting **Miss. Bar v. Clegg**, 255 So. 3d 150, 153 (Miss. 2017)). Also, the Louisiana court relied upon the hearing committee's report, which showed that Malone committed multiple acts of misconduct and violated the Rules of Professional Responsibility. *See Malone*, 303 So. 3d at 616; *see also* **Miss. Bar v. Inserra**, 38 So. 3d 605, 607 (Miss. 2009).

¶17.   "An attorney 'who is subject to reciprocal discipline may . . . offer any mitigating factors which he thinks serve to diminish his culpability and therefore diminish the necessity

9

for, or severity of, sanctions to be imposed by this Court.'" ***Thomas***, 291 So. 3d at 308 (alteration in original) (quoting ***Miss. Bar v. Strauss***, 601 So. 2d 840, 844 (Miss. 1992)). In his answer, Malone admits the factual matters set forth in the formal complaint and provides mitigating factors that attempt to explain his behavior. Most of the mitigating factors that he asserts were considered by the Louisiana Supreme Court. For example, Malone has asserted continuously that he suffers from post-traumatic stress disorder and that he moved from the United States in November 2018 due to his wife's military assignment to Belize. The Louisiana court considered Malone's "personal or emotional problems and his remorse" when rendering its decision and suspended him for two years. ***Malone***, 303 So. 3d at 619. Before this Court Malone asserts, for the first time, that he does not believe he has ever practiced in Mississippi, he has not practiced law in any jurisdiction in the past four years, and he has no plans to return to the practice of law in Mississippi in the future.

¶18. But Malone's misconduct and the aggravating factors outweigh mitigation and call for reciprocal discipline. *See **id.*** ("Aggravating factors include a prior disciplinary record, a pattern of misconduct, multiple offenses, vulnerability of the victims, and substantial experience in the practice of law."). Additionally, this Court has held that "[t]he purpose of discipline is not simply to punish the guilty attorney, but to protect the public, the administration of justice, to maintain appropriate professional standards, and to deter similar misconduct." ***McIntyre***, 38 So. 3d at 625 (internal quotation marks omitted) (quoting ***Miss. State Bar Ass'n v. A Miss. Attorney***, 489 So. 2d 1081, 1084 (Miss. 1986)).

¶19.   Mississippi case law also supports Malone's suspension. In ***Mississippi Bar v. Dolan***, which is a case involving reciprocal discipline in Tennessee, the Supreme Court of Tennessee determined that Dolan had violated "Rules 1.1; 1.2; 1.3; 1.4; 1.5; 1.15; 1.16; and 8.4 of the Tennessee Rules of Professional Conduct." ***Miss. Bar v. Dolan***, 987 So. 2d 921, 922 (Miss. 2008). Dolan admitted having violated the Rules of Professional Conduct, which prompted this Court to find that "the sanctions of a one-year suspension, one-year probation and assessment of costs [were] appropriate." ***Id.*** at 923-24. Malone has admitted the facts alleged in the complaint.

¶20.   ***Mississippi Bar v. Daniels*** was a reciprocal discipline case in which Daniels had been suspended from the practice of the law in Connecticut for a period of two years. ***Miss. Bar v. Daniels***, 890 So. 2d 872, 873 (Miss. 2004). Similar to Malone, Daniels had failed to communicate adequately with his clients, had failed to respond to accounting requests, and had failed to provide refunds to his clients. ***Id.*** This Court found that "a two-year suspension [was] appropriate." ***Id.*** at 874.

¶21.   No circumstances support our deviating from the two-year suspension that the Louisiana Supreme Court imposed. Malone admitted the misconduct, and he provides no mitigating factors that outweigh the aggravating factors. Thus, we find that a two-year suspension is appropriate, and we order that Malone shall be suspended from the practice of law for two years from the entry of this decision. *See **Caldwell***, 118 So. 3d at 555 ("In reciprocal discipline cases, we often have made discipline in this state prospective, even

11

when the period of discipline imposed by another state had expired by the time this Court imposed its discipline." (citing *Miss. Bar v. Ishee*, 987 So. 2d 909, 910 (Miss. 2007))).

## CONCLUSION

¶22.    This Court finds that reciprocal discipline is appropriate. Therefore, we suspend Malone from the practice of law for two years from the date of this decision. We hold also that Malone shall reimburse the Mississippi Bar the sum of $360 for its costs and expenses to be paid within thirty days after the date of this decision.

¶23.    **ROBERT W. MALONE IS SUSPENDED FROM THE PRACTICE OF LAW IN THE STATE OF MISSISSIPPI FOR TWO YEARS UPON ENTRY OF THIS DECISION. MALONE SHALL REIMBURSE THE MISSISSIPPI BAR THE SUM OF $360 TO BE PAID WITHIN THIRTY DAYS AFTER THE DATE OF THIS DECISION.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**